# EXHIBIT"A"

**Aylin Hovispo**

| | |
|---|---|
| **From:** | Javier Coronado |
| **Sent:** | Tuesday, May 31, 2022 10:04 PM |
| **To:** | sealedfpd@flds.us.courts.gov |
| **Cc:** | Aylin Hovispo; Michael Diaz; Victor Arca; brian@recorrieber.com; sealedfpd@flsd.uscourts.gov; torres@flsd.uscourts.gov |
| **Subject:** | In Re Application of Antonio Lauria Pulgar (Case No. 22-20836-MC-ALTONAGA/TORRES) |
| **Attachments:** | ANTONIO LAURIA PULGAR'S VERIFIED RESPONSE IN OPPOSITION.pdf |

Dear Sir or Madam:

We write on behalf of our client, Antonio Lauria Pulgar.

Please find enclosed a verified response in opposition to be filed in Case No. 22-20836-MC-ALTONAGA/TORRES.

Thank you in advance for your attention to this matter, and we look forward to receiving confirmation of this filing.

Respectfully,


**Javier Coronado**
Partner
*Admitted to practice in U.S. (N.Y./Federal) & Colombia*
*AML & Sanctions Specialist (ACAMS)*



Diaz, Reus & Targ, LLP
Calle 98 No. 9-03  Oficina 802
Edificio Torre Sancho BBDO
Bogotá, Colombia

Office: +57 (1) 743-9219
jcoronado@diazreus.com | www.diazreus.com

United States . Latin America . Europe . Asia . Middle East . Africa





NOTICE: The information contained in this electronic mail transmission is intended by this law firm for the use of the named individual or entity to which it is directed and may contain information that is privileged or otherwise confidential. It is not intended for transmission to, or receipt by, anyone other than the named addressee. It should not be copied or forwarded to any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying or forwarding it, and notify the sender of the error by reply e-mail or calling the above telephone number (collect)  so that our address record can be corrected. Thank you for your cooperation.

DIAZ, REUS & TARG LLP IS AN INTERNATIONAL LEGAL PRACTICE PROVIDING CLIENT SERVICES WORLDWIDE THROUGH ITS MEMBER FIRMS AND AFFILIATES. ANY REFERENCE TO A "PARTNER" MEANS A PERSON WHO IS A PARTNER, MEMBER, CONSULTANT, OR EMPLOYEE WITH EQUIVALENT STANDING AND QUALIFICATIONS IN ONE OF DIAZ REUS' MEMBER FIRMS OR AFFILIATES.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-20836-MC-ALTONAGA/TORRES**

In Re Application of

ANTONIO LAURIA PULGAR

Applicant,

Pursuant to 28 U.S. Code § 1782
For Judicial Assistance in Obtaining
Evidence For Use in a Foreign and
International Proceeding.

_____/

**ANTONIO LAURIA PULGAR'S *VERIFIED* RESPONSE IN OPPOSITION TO**
**RESPONDENT MORELIA COROMOTO PÉREZ PRESILLA'S**
**MOTION TO VACATE ORDER AND TO QUASH SUBPOENA**

Antonio Lauria Pulgar ("Antonio") Responds in Opposition to Morelia Coromoto Pérez

Presilla's ("Perez") Motion to Vacate this Court's Sealed *Ex Parte* Order of March 22, 2022, and

to Quash the Subpoena to Perez [D.E. 6] (the "Motion").[1]  In support, Antonio states:

**INTRODUCTION**

This cause comes before the Court upon Perez's motion to vacate this Court's March 22,

2022 order granting Antonio's application to obtain evidence for use in a pending criminal

investigation conducted against Antonio in Venezuela.  Such criminal case stems from a complaint

filed by Perez, the ex-wife of Antonio's late father, requesting the Venezuelan Prosecutor's Office

to investigate Antonio for allegations of criminal conspiracy and fraud. Antonio denies these

---

[1]  Through the instant response, Antonio complies with the May 25, 2022 Order [D.E. 13] instructing him to file a verified response to the Motion by May 31, 2022, and to address in it the factual allegations made in the Declaration of Doris Scarlet Piñero Silva [D.E. 12].  Antonio will make a separate submission in response to the Court's direction to show good cause why the matter should remain sealed.

1

allegations and seeks discovery available to him through 28 U.S.C. § 1782 to prove the hollow and meritless nature of Perez's criminal allegations.

In her motion, Perez claims that the Court's March 22, 2022 incorrectly applied the factors that courts are required to assess in reviewing § 1782 applications.  But Perez's argument is legally and factually unsupportable, as each of those factors favor weigh in favor of Antonio.  Ultimately, Perez's motion is based on a misapprehension of Venezuelan law governing criminal proceedings in that country, as well as of the U.S. legal standards on § 1782 applications.  Perez's motion also rests on a  mischaracterization of the subpoena served upon Perez under this Court's order.  As such, Perez's motion should be denied.

## **BACKGROUND**

### *Antonio's Application Pursuant to 28 U.S.C § 1782*

1.      Perez has brought a series of frivolous actions in an illegal attempt to reopen the partition of Antonio's father,  Mr. Jesus Alberto Lauria Lesseur ("Lauria Sr."), which became final in 2010.  *See* Declaration of Freddy Aray Larez ("Aray") [D.E. 1, pp. 10-12] ("Decl. Aray") ¶ 12; Second Declaration of Aray ("2nd Decl. Aray"), attached hereto as **Exhibit "1**,**"** ¶ 7.  Perez' latest sham action is a criminal complaint that she filed in 2019 requesting the Venezuelan Prosecutor's Office to investigate Antonio and his siblings for a purported conspiracy to deceive the Venezuelan probate court using a fabricated prenuptial agreement.  *Id.* ¶ 9.

2.      As a result of Perez's Complaint, Antonio, his siblings, and Perez's former lawyer are now the targets of Criminal Case Number MP-86604-2019 (the "Criminal Case"), an ongoing criminal investigation conducted by Venezuela's National Prosecutor No. 45 ("Prosecutor 45").  *Id.* ¶ 6.  The Criminal Case has caused, *inter alia*, Antonio's assets in Venezuela to be frozen and Antonio to potentially face a warrant for his arrest.  *See* 2nd Decl. Aray ¶¶ 12-13.

3.      Antonio seeks to contest Perez's assertions in the Criminal Case.  However, the laws of Venezuela do not compel Perez to testify or produce documents.  *See* Declaration of Prof. Carlos Enrique Mouriño ("Mouriño") [D.E. 1, pp. 10-12] ("Decl. Mouriño")  ¶¶ 19, 21.   Antonio has thus sought, pursuant to 28 U.S.C § 1782, the issuance of a subpoena for the deposition *duces tecum* of Perez (the "Subpoena"). *See* [D.E. 1, 7-8].

***The Order Granting Antonio's Application***

4.      On March 22, 2022, this Court granted Antonio's Application and authorized him to issue the Subpoena [D.E. 4, p. 3].  The Court found that the Application satisfied 28 U.S.C § 1782's statutory requirements, and held that the four discretionary factors set out in *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241 (2004) (the "*Intel* factors") weigh in favor of granting discovery assistance to Antonio:

> First, Petitioner is not (or at least is not yet) a "participant" in the Venezuelan criminal matter, and thus, discovery "may be unobtainable absent [section] 1782 aid." . . .Second, Venezuelan law evinces receptivity to the evidence that Petitioner seeks because it permits him to investigate criminal accusations made against him and requires the investigating prosecutor to consider evidence that Petitioner submits. . .  Third, nothing in the Petition suggests that Petitioner is attempting to circumvent proof-gathering restrictions of Venezuelan law . .  Fourth, Petitioner's proposed subpoena duces tecum for deposition does not appear to be unduly burdensome.

*Id.* at 2-3 (citations omitted).

***Perez's Intervention In This Case***

5.      Unwilling to offer testimony or provide documents, Perez intervened in this matter. *See* [D.E. 5] (Perez's motion to obtain copies of the documents supporting Antonio's 1782 application) *and* [D.E. 6] (Perez's motion to vacate the Court's March 22, 2022 Order and to quash the Subpoena).

6.      On May 10, 2022, the parties agreed as to Perez's first request and this Court entered an order directing Applicant to produce a copy of the documents under seal to Perez. *See* [D.E. 11].

7.      Having reviewed the documents underlying Antonio's Application, Perez filed an uncertified translation of a Declaration from Perez's Venezuelan counsel, Doris Scarlet Piñero Silva ("Piñero Silva") [D.E. 12], in further support of the Motion.   Piñero Silva declares that, on May 20, 2022 she received an email from Prosecutor 45 advising that "Morellia (sic) Coromoto Perez Presilla is not authorized to provide information regarding the above-referenced complaint." [D.E. 12, ¶ 6].

***Perez's Motion to Vacate the March 22, 2022 Order***

8.      Ms. Perez claims that, in granting Antonio's application, the Court incorrectly assesses the four *Intel* factors [D.E. 6 *at generally*].  Specifically, Perez claims that the court's assessment "was based on erroneous factual or legal assertions," and the Subpoena "would require Ms. Perez to violate Venezuelan criminal law." *Id.* at 2.

9.      As further explained below, this Court properly applied the *Intel* discretionary factors in granting the Application.  Moreover, as set forth in the second declaration of Mouriño attached hereto as **Exhibit "2"** ("2nd Decl. Mouriño"), Perez is authorized under the laws of Venezuela to comply with Antonio's Subpoena.  *See* 2nd Decl. Mouriño, ¶¶ 22-29.  Mouriño also explains in his second declaration that "the email attached to Piñero Silva's declaration, has no legal value and its authenticity cannot be verified under the laws and regulations of Venezuela." *Id.* ¶ 39. *See also* 2nd Decl. Aray ¶¶ 10-11 (same).  As such, this Court should not vacate the March 22, 2022 order nor quash the Subpoena.

4

## ARGUMENT

**I.      The Legal Standard For Denying the Motion.**

Here, the Court's analysis turns upon its application of the so-called *Intel* factors.  Those factors require a court, in granting an application for judicial assistance, to consider: (1) whether evidence "may be unobtainable absent § 1782(a) aid;" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court assistance;" (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the § 1782(a) request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 244–45.

This Court rightfully applied the *Intel* factors in favor of Antonio.

**II.     The First *Intel* Factor Weighs in Favor of Judicial Assistance As Perez Is Beyond The Reach Of Venezuelan Courts.**

Perez asserts  that the first *Intel* factor – the question of whether the 1782 application is directed to a non-party respondent – weighs against Antonio.  Motion, ¶¶ 8-10.  Specifically, she claims to be a "party" of the Criminal Case.   But Perez's assertions are unfounded. An alleged victim is not party to a criminal proceeding in Venezuela.  2nd Decl. Mouriño ¶¶ 20; 2nd Decl. Aray ¶ 5.  Here, Perez cannot  "displace the Public Prosecutor from exercising the criminal action." 2nd Decl. Mouriño ¶¶ 20.

Even if Perez was a "party" to the Criminal Case, the first *Intel* factor would still weigh in favor of granting judicial assistance in this case. Discovery requests to a party to the foreign case are permitted under 28 U.S.C § 1782 if such party is beyond the reach of the foreign court.  *In re Clerici*, 481 F.3d 1324, 1334–35 (11th Cir. 2007).

Perez lives in the U.S. As she avows, Venezuela cannot issue letters rogatory or other requests for international judicial cooperation to the U.S. Nor can Venezuelan courts compel Perez to appear for a deposition or produce documents in the Criminal Case. *See* Decl. Mouriño ¶¶ 17-21. Perez is beyond the reach of the Courts of Venezuela, and the first *Intel* factor favors Antonio's Application. *Clerici*, 481 F.3d at 1334–35.

III.   **The Second *Intel* Factor Weighs in Favor Of Granting Assistance, as Antonio Is Not Attempting To Circumvent Proof-gathering Restrictions of Venezuelan Law.**

A.      **Perez Can Respond to the Subpoena Under the Laws of Venezuela.**

Under the second *Intel* factor, the Court should consider "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court assistance[.]" *Intel*, 542 U.S. at 244–45. Perez improperly contends that the second *Intel* factor is not met here as the "Venezuelan Criminal Court would likely not be receptive to Section 1782 assistance." Motion at 4. Specifically, Perez speculates that a Venezuelan Criminal Court would not be receptive to a 1782 assistance because Perez cannot, under Venezuelan law, provide "information about an ongoing criminal investigation or reveal related facts." Motion ¶ 13. Perez further speculates that "if Ms. Perez were to testify about an ongoing investigation or reveal related facts, she may be subject to prosecution in Venezuela." *Id.*

Perez's assertions are false, as the confidentiality or privacy of the investigation in Venezuela does not prevent Perez from testifying and producing information and documents to Antonio for the preparation of his defense. 2nd Decl. Mouriño ¶ 22. Critically, Venezuelan law does not prevent Perez from "testifying about the facts or circumstances that she knows and triggered the Criminal Case." *Id.* ¶ 21. Moreover, Venezuelan law does not provide for prosecutions in the event a witness gives testimony in a foreign jurisdiction. *Id.* ¶¶ 27-29.

**B.      Perez Has Not Provided Sufficient Evidence That Venezuelan Courts Would Be Unreceptive To Discovery Under The Application.**

Federal courts give little weight to the second *Intel* factor unless the foreign forum is "expressly unreceptive to an American court's intercession." *In re Application Sveaas*, 249 F.R.D. 96, 107 (S.D.N.Y. 2008). "[A] district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995). "Authoritative proof" exists "where the representative of a foreign sovereign has *expressly and clearly* made its position known." *In re Application of Gemeinshcaftspraxis*, CIV.M19-88 BSJ, 2006 WL 3844464, at *6 (S.D.N.Y. Dec. 29, 2006) (emphasis added). That is not the case here.

Perez's assertions to the contrary are unavailing. Her evidence as to the express and clear intention of the government of Venezuela is single email from Venezuelan Prosecutor 45, the individual investigating Antonio, stating that Perez "is not authorized to provide information regarding the above-referenced complaint," [D.E. 12] ¶ 6.

On its face, that email is deficient. For example, it cites the wrong case number for the Criminal Case. It "doesn't specify the factual basis that is the reason for the decision, or the matter it intends to resolve." 2nd Decl. Mouriño. ¶ 37. As a matter of law, the email thus "has no legal value [in Venezuela] and its authenticity cannot be verified . . . ." *Id.* ¶ 39.

Even assuming, *arguendo*, that Prosecutor 45 has authority to speak for Venezuela, the deposition of Perez should proceed. The proper course is to allow the deposition requested and then permit Venezuelan courts to determine the admissibility of evidence collected. *See In re Application of Grupo Qumma*, 2005 WL 937486 at * 3 (S.D.N.Y. 2005) (granting application and leaving the issue of admissibility for the court in Mexico to decide).

Here, the second *Intel* factor thus supports Antonio's Application.

IV.    **The Third *Intel* Factor Weighs in Favor Of Granting Assistance, as Antonio Is Not Attempting To Circumvent Proof-gathering Restrictions of Venezuelan Law.**

A.    **Venezuelan Law Allows Antonio to Take Perez's Deposition.**

The third *Intel* factor requires courts to consider whether the § 1782 application conceals an attempt to circumvent foreign proof-gathering restrictions. Relevant here, Perez alleges that "[a]s Petitioner apparently is evading participation in the Venezuelan investigation, he is using this Subpoena in order to circumvent foreign law restrictions." Motion ¶ 15. Specifically, Perez asserts that victim protects in Venezuela prevent Antonio from obtaining discovery from her *Id.* ¶ 18. Those assertions are false.

Antonio has appeared in the Criminal Case through his attorneys to "prove to the prosecutors in Venezuela that Perez's objective with her complaint is none other than to extort Antonio and his siblings to accept a new distribution of the assets of Jesús Alberto Lauría Lesseur." 2nd Decl. Aray. ¶ 7. Moreover, under the laws of Venezuela, Antonio is entitled to obtain evidence to support his case regardless of the fact that he has not been formally charged. *Id.* ¶ 26. Also, Venezuelan concerns of confidentiality do not preclude Perez from testifying or producing documents related to the accusations of her criminal complaint. *Id.* ¶ 26.

B.    **The Evidence Sought by Antonio Is Not Required to Be Discoverable Under the Laws of Venezuela.**

Assuming, *arguendo*, that the Subpoena requests information that is not discoverable by Antonio in Venezuela, that fact alone would not be enough to render the Subpoena a 'circumvention' of foreign rules.  28 U.S.C § 1782 does not impose the requirement that the information is discoverable in Venezuela.  *Intel*, 542 U.S. at  260 ("nothing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the

foreign jurisdiction if the materials were located there."); *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) (finding that "a district court should not consider the *discoverability* of the evidence in the foreign proceeding, [and] it should not consider the *admissibility* of evidence in the foreign proceeding in ruling on a section 1782 application") (emphasis in original).

Additionally, courts have held that an application under 28 U.S.C § 1782 does not constitute a 'circumvention' of proof-gathering restrictions when, as here, the foreign tribunal is free to protect any relevant policies by declining to admit any evidence gathered pursuant to means it deems unacceptable. *See In re Application of Gemeinshcaftspraxis,* 2006 WL 3844464 at *7; *In re Imanagement Services*, MISC 0589FB, 2005 WL 1959702, at *5 (E.D.N.Y. Aug. 16, 2005). Once Perez's deposition *duces tecum* is taken, courts in Venezuela can make the ultimate determination as to admissibility of evidence gathered. *See* Decl. Mouriño ¶ 24. As such, the third *Intel* Factor also weighs in favor of granting assistance.

**V.   The Fourth *Intel* Factor Favors Antonio Because The Subpoena Is Reasonably Calculated to Lead to Information and Documents Concerning The Facts of Perez's Accusations.**

**A.      The Subpoena Is Not Improper**

The fourth *Intel* factor requires a court to assess whether the § 1782(a) application is unduly intrusive or burdensome. *Intel*, 542 U.S. at 244–45.

Perez contends that "the scope of the deposition is unlimited under the Subpoena." Motion ¶ 23. Not true. Antonio's Subpoena is narrowly tailored. It seeks to "identify and obtain information concerning Perez's accusations against Antonio, including Perez's non-privileged communications with others about her Complaint and the Criminal Case, as well as

communications and documents related to the prenuptial agreement, probate, and property at issue in the Criminal Case." *See* [D.E. 1, 7-8] .

Perez also classifies the Subpoena as harassing. She directs the Court to unidentified cases in Venezuela and Florida, and an eviction action in Broward County, Florida, captioned *Belltower Holdings Ltd. v. Morelia C. Perez,* No. COCE22020858. *Id.*  ¶ 22. But,  Antonio is not a party in *Belltower*.  *See* Declaration of Raul Valdez-Fauli, attached hereto as **Exhibit "3,"** ¶ 8.  This Court should also note that, other than the Criminal Case (where Perez is not a party), there is no other identifiable proceeding pending between Antonio and Perez. The last time Perez and Antonio were parties in the same matter was in 2010, when the partition of Lauria Sr.'s estate concluded.  *See* Decl. Aray" ¶ 12; 2nd Decl. Aray  ¶ 7.

### B.      Perez Conclusory Allegations About the Subpoena's Requests For Production Should Be Rejected.

In her Motion, Perez alleges that the Requests for Production Nos. 1, 2, and 3 of the Subpoena "are either unduly burdensome, privileged, and/or other protected matter." Motion, ¶ 23.[2]  But such conclusory objections should be rejected because "a district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015)

The foundation for objection to a request for production must be stated with "specificity." Fed. R. Civ. P. 34(b)(2)(B). Indeed, as Your Honor has identified, when "a party responds to a discovery request with objections, it must do so in a [clear] and unambiguous manner, and must include a supporting explanation or justification for the objections."  *See also Rivera v. 2K*

---

[2] In her Motion, Perez responds to Request for Production 4 advising that she "believes there are no responsive documents."  Motion, ¶ 26.

*Clevelander*, LLC, 2017 WL 5496158, 3 (S.D. Fla. 2017). This means that respondents such as Perez cannot simply assert that discovery requests are "unduly burdensome" but "must show specifically how...each [discovery request] is not relevant or how each question is overly broad, burdensome or oppressive." *Rivera*, 2017 WL 5496158, at *3.

A similar principle governs objections on the basis of privilege. *See Guzman v. Irmadan, Inc.*, 249 F.R.D. 399, 401 (S.D. Fla. 2008) ("Generalized objections asserting 'confidentiality,' attorney-client privilege or work product doctrine ... do not comply with local rules."). Blanket assertions of "privilege" are not given weight in this District.

Here, aside from contending that she is not authorized to answer such requests under Venezuelan law (a contention that has been sufficiently rebutted), Perez does not specify how each of Antonio's requests for production is, in fact, burdensome, privileged, or otherwise improper. Perez's boilerplate objections should be rejected.

## **CONCLUSION**

Based on the foregoing, Antonio respectfully requests the Court deny Perez's Motion to Vacate this Court's Order of March 22, 2022 and to Quash the Subpoena [D.E. 6]; and for such further relief the Court deem just and proper.

DATE: May 31, 2022.             Respectfully submitted,

                                DIAZ REUS & TARG, LLP
                                100 Southeast Second Street, Suite 3400
                                Miami, Florida 33131
                                Telephone (305) 375-9220


                                By: */s/ Michael Diaz, Jr.*
                                Michael Diaz, Jr., (Florida Bar No. 606774)
                                Attorney Email: mdiaz@diazreus.com
                                Javier Coronado Diaz (New York Bar No. 5584842)
                                (Admitted to this Court *Pro Hac Vice*)
                                Attorney Email: jcoronado@diazreus.com

11

Victor Arca (Florida Bar No. 1014225)
Attorney Email: varca@diazreus.com

*Counsel for Applicant*

## **VERIFICATION**

I, Antonio Lauria Pulgar, pursuant to 28 U.S.C §1746(2), under the penalties of perjury,

declare that I have read the foregoing, and that the facts stated in it are true.

Executed this 31 of May of 2022, at Panama City, Panama.

_____

Antonio Lauria Pulgar


## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 31, 2022, the foregoing was filed in this case through

the Clerk for Sealed Documents (sealedfpd@flds.us.courts.gov), and a true and correct copy has

been sent to Non-Party Morelia C. Pérez Presilla's counsel, Mr. Brian Recor, Esq., via email.


By: */s/ Michael Diaz, Jr.*
Michael Diaz, Jr.

EXHIBIT "1"

## UNITED STATES DISTRICT COURT FOR THE

## SOUTHERN DISTRICT OF FLORIDA

## CASE No.  22-20836-MC-ALTONAGA/TORRES

In the Motion of

ANTONIO LAURÍA PULGAR

     Applicant,

Pursuant to 28 U.S.C § 1782,
Application for Assistance in
Obtaining Evidence for Use in
International Proceedings.
_____ /

### FREDDY ARAY LAREZ SECOND DECLARATION IN SUPPORT OF THE *EX PARTE* APPLICATION FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. §1782

The undersigned, Freddy Aray Larez, states the following:

1.     I am of legal age and have personal knowledge of the facts that I state hereunder.

2.     As I explained in my first declaration, I am a criminal attorney at Tinoco, Travieso, Planchart & Nuñez Abogados, in Caracas, Venezuela, and I legally represent Antonio Lauría Pulgar (hereinafter, "Antonio") in case MP-86604 -2019. This is a criminal investigation currently under consideration by the 45th Public Prosecutor's Office with National  Jurisdiction (the "45th Prosecutor's Office") in Venezuela, against my client and his siblings, Andres, Jesus and Carmen Lauria Pulgar (jointly, the "Lauria Siblings"); and attorney Milagros Margarita del Coromoto Zapata ("Zapata") [1].  Hereunder, I will refer to this investigation as the "Criminal Case."

---

[1] Prior to the 45th Prosecutor's Office, the Criminal Case was assigned to the 28th National Prosecutor's Office with National Jurisdiction. Currently, the 45th Prosecutor's Office is processing the Criminal Case together with the 30th

3.      I file this declaration in support of the application for a subpoena *duces tecum* for Morelia Coromoto Perez Presilla ("Perez"), who resides at 1125 W Cypress Dr. #R, Pompano Beach, Florida, 33069 (hereinafter, the "application") .

4.      Antonio's attorneys in the United States have requested additions to my first declaration to address certain statements made by Hernando Diaz-Candia ("Diaz-Candia") and Doris Scarlet Piñero Silva ("Piñero Silva"), two Venezuelan attorneys who have filed statements in the case. With regard thereto, Antonio's attorneys provided me with a copy of the statements of these two attorneys.

5.      Díaz-Candia states in his declaration that Perez is "a party to" the Criminal Case. Certainly, Perez filed the complaint that was the basis for such investigation. However, under Venezuelan law, this fact does not make her a party in the Criminal Case. For this to happen, she needs to file a complaint as a party, her own specific accusation, or adhere to the accusation of the Public Prosecutor's Office, and Perez has not done so in the Criminal Case.

6.      Díaz-Candia also states in his declaration that Antonio is circumventing his appearance in the Criminal Case. This is not true. Since September 8, 2019, Antonio has appeared in the Criminal Case through his attorneys, including the undersigned. In that regard, as Exhibit "A", is a copy of the power of attorney that accredits me as a special attorney for Antonio in the Criminal Case.

7.      Through the undersigned, Antonio has been exercising his technical defense to prove to the prosecutors in Venezuela that Perez's objective with her complaint is none other than to extort Antonio and his siblings to accept a new distribution of the assets of Jesús Alberto Lauría

Prosecutor's Office with National Jurisdiction, and 37th for the Caracas Metropolitan Area. In this declaration, I used the term "Ministerio Publico" to refer to the Prosecutor's Offices assigned to the Criminal Case, indistinctly.

Lesseur ("Lauria Sr.") (R.I.P). Over the years, Perez has filed several frivolous actions to disavow the judgment that concluded the distribution of Mr. Lauria Sr.'s assets in Venezuela. Antonio's theory is that the Criminal Case is another one of these actions.

8.       As Composite Exhibit "B," I am filing a copy of two requests my firm has filed with the Venezuelan Prosecutor's Office, on behalf of Antonio, requesting the Criminal Case be closed.

9.        Although the Criminal Case is confidential in Venezuela, pursuant to the last section of Article 286 of the Organic Code of Criminal Procedure, the Venezuelan Prosecutor's Office has sketchily informed me of the status and scope of Perez's complaint against Antonio. Therefore, Díaz-Candia's statements with regard to the facts the application seeks to obtain confidential information on the Criminal Case are not true. Through the application, Antonio seeks to question the truth of the statements that Morelia makes against him, as well as to obtain information and documents on the facts that allegedly serve as the grounds for these accusations.

10.       With respect to Piñero Silva's declaration, I note that she attaches an email dated May 19, 2022, in which the prosecutor assigned to the case allegedly reports that "Morellia (sic) Coromoto Perez presilla (sic) is not (sic) authorized to provide information on the referenced complaint." This email does not fulfil the requirements established by law for official documents for use abroad, such as that the document is legalized by a consular officer and that the document is translated to the language of that foreign country, through a certified public translator. The Public Prosecutors' documents that are to be sent overseas must also be confirmed by the Attorney General of the Republic.

11.     The case number indicated in the email attached to Piñero Silva's declaration ("M-66304-2019") is not for the Criminal Case ("MP-86604-2019"). Further, in Venezuela it is not usual that a prosecutor will communicate with the attorney for the complainant through emails and indicate to be "at his service" (sic).

12.     For Antonio, it is urgent to show that the Perez' accusations in Venezuela are false. Inasmuch as Antonio resides in Panama, the Public Prosecutor may request a warrant for his arrest.

13.     Additionally, in Venezuela, Antonio and the Lauria siblings' assets have been affected on account of Perez's accusations. Thus, on May 23, 2019, one of the prosecutors who had been in charge of the Criminal Case, appeared before the 20th Court of First Instance acting as a magistrate for the Criminal Judicial Circuit of the Caracas Metropolitan Area (the "20th Court of First Instance"), to request injunctions barring the transfer and encumbrance of the assets of the Estate of the decedent, Jesús Alberto Lauria Lesseur, including assets in which Antonio has an interest. On May 27, 2019, the 20th Court of First Instance, also issued precautionary measures barring the transfer and encumbrance of the assets belonging to Antonio Enrique Lauria Pulgar, Andres Ignacio Lauria Pulgar, Jesus Alberto Lauria Pulgar, Carmen Carolina Lauria Pulgar and Milagros Margarita del Coromoto Zapata de Pérez.

Pursuant to 28 USC §1746(1), I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and accurate.

Signed May 27, 2022, in Puerto Ordaz, Bolívar, Venezuela.


By:   _____

          Freddy Aray Lárez

## CERTIFICATE OF ACCURACY

I, **Esther Cecilia Crespo**, an interpreter certified by the Administrative Office of the United States Courts, for and on behalf of **Liaison Services, Inc.**, hereby certify that the foregoing translation from Spanish into English, attached hereto and consisting of <u>4</u> page(s), is a true and correct translation of the original document.

Esther Cecilia Crespo
Miami, Florida

# CORTE DISTRITAL DE LOS ESTADOS UNIDOS PARA EL DISTRITO SUR DE FLORIDA

## CASO No.  22-20836-MC-ALTONAGA/TORRES

En la Aplicación de

ANTONIO LAURÍA PULGAR

     Solicitante,

Conforme con 28 U.S.C § 1782,
Solicitud de Asistencia en la Obtención
De Evidencia para Uso en Procesos Internacionales.

_____/

## SEGUNDA DECLARACIÓN DE FREDDY ARAY LÁREZ EN APOYO DE LA SOLICITUD *EX PARTE* DE ASISTENCIA JUDICIAL DE CONFORMIDAD CON 28 U.S.C §1782

Yo, Freddy Aray Lárez, declaro lo siguiente:

1.     Tengo más de dieciocho años, y conocimiento personal de los hechos que declaro a continuación.

2.     Como expliqué en mi primera declaración, soy abogado penalista de la firma Tinoco, Travieso, Planchart & Núñez Abogados, en Caracas, Venezuela, y  represento legalmente a Antonio Lauría Pulgar (en adelante, "Antonio") en el caso MP-86604-2019. Esta es una investigación penal que adelanta actualmente la Fiscalía 45 del Ministerio Público a nivel Nacional con Competencia Plena (la "Fiscalía 45") en Venezuela, en contra de mi cliente y sus hermanos, Andrés, Jesús y Carmen Lauría Pulgar (conjuntamente, los "Hermanos Lauría"); y la abogada Milagros Margarita del Coromoto Zapata ("Zapata") [1]. En adelante, me referiré a esta investigación como el "Caso Penal."

---

[1] Antes de la Fiscalía 45, el Caso Penal estuvo a cargo de la Fiscalía 28 Nacional del Ministerio Público con Competencia Plena.  Actualmente, la Fiscalía 45 tiene a su cargo el Caso Penal en conjunto con la Fiscalía 80

1

3.　　　Presento esta declaración en apoyo del requerimiento (*subpoena*) *duces tecum* de Morelia Coromoto Pérez Presilla ("Pérez"), quien reside en 1125 W Cypress Dr # R, Pompano Beach, Florida, 33069 (en adelante, la "Solicitud").

4.　　　Los abogados de Antonio en Estados Unidos han solicitado una ampliación de mi primera declaración para referirme a ciertas afirmaciones de Hernando Díaz-Candia ("Díaz-Candia") y Doris Scarlet Piñero Silva ("Piñero Silva"), dos abogados Venezolanos que han presentado declaraciones en el caso.  En ese sentido, los abogados de Antonio me suministraron copia de las declaraciones de estos dos abogados.

5.　　　Díaz-Candia afirma en su declaración que Pérez es "parte" del Caso Penal. Pérez ciertamente es quien presentó la denuncia que motivó dicha investigación. Sin embargo, bajo las leyes de Venezuela, este hecho no la convierte en parte del Caso Penal. Para que esto ocurra, es necesario que ella presente una querella de parte, una acusación particular propia o se adhiera a la acusación del Ministerio Público y dichas actuaciones no han sido adelantadas por Pérez en el Caso Penal

6.　　　Díaz-Candia también afirma en su declaración que Antonio está evitando comparecer al Caso Penal. Esto no es cierto. Desde el 8 de septiembre de 2019, Antonio ha comparecido al Caso Penal a través sus apoderados, incluyendo al suscrito. En ese sentido, como Evidencia "A," adjunto copia del instrumento poder que me acredita como apoderado especial de Antonio en el Caso Penal.

7.　　　A través del suscrito, Antonio viene ejerciendo su defensa técnica para probar a los fiscales de Venezuela que el objetivo de Pérez con su denuncia no es otro que extorsionar a Antonio y a sus hermanos para que acepten una nueva distribución de los bienes

---

Nacional con Competencia Plena y 37 del Área Metropolitana de Caracas. En esta declaración utilizo el término "Ministerio Público" para referirme a las fiscalías que conocen del Caso Penal, indistintamente.

2

de Jesús Alberto Lauría Lesseur ("Lauría Sr.") (Q.E.P.D).  A lo largo de los años, Pérez ha iniciado varias acciones frívolas para desconocer la sentencia que concluyó la partición de los bienes de Lauria Sr. en Venezuela.  La teoría de Antonio es que el Caso Penal es una más de estas acciones.

8.      Como Evidencia Compuesta "B," presento copia de dos peticiones que mi firma ha presentado al Ministerio Público de Venezuela, en nombre de Antonio, solicitando el cierre del Caso Penal.

9.      Si bien el Caso Penal es reservado en Venezuela, de conformidad con el último aparte del artículo 286 del Código Orgánico del Proceso Penal, el Ministerio Público de Venezuela me ha informado someramente sobre el estado y alcance de la denuncia de Pérez en contra de Antonio. Por esta razón, las afirmaciones de Díaz-Candia en el sentido de que la Solicitud busca obtener detalles reservados sobre el Caso Penal no son ciertas. A través de la Solicitud, Antonio busca cuestionar la veracidad de los señalamientos que Morelia hace en su contra, así como obtener información y documentos sobre los *hechos* que supuestamente le sirven de fundamento a estos señalamientos.

10.     En relación con la declaración de Piñero Silva, observo que ella adjunta un correo electrónico del 19 de mayo de 2022 en el que presuntamente el fiscal del caso informa que "Morellia (sic) Coromoto Pérez presilla (sic) no esta (sic) facultada para dar información sobre la referida denuncia." Este correo no cumple con los requisitos que establece la ley para los documentos oficiales con destino al extranjero, como lo son que el documento se encuentre legalizado por un funcionario consular y que el documento sea traducido al idioma del país extranjero, por medio de interprete público certificado. Los documentos del Ministerio Público que van con destino al extranjero también deben ser avalados por el Fiscal General de la República.

3

11.     El número de la causa indicado en el correo electrónico anexo a la declaración de Piñero Silva ("M-66304-2019") no es el del Caso Penal ("MP-86604-2019"). Además, en Venezuela no es común que un fiscal se comunique con el apoderado del denunciante a través de correos electrónicos y les indique estar "a sus ordenes" (sic).

12.     Para Antonio es urgente demostrar la falsedad de los señalamientos de Pérez en Venezuela. Toda vez que Antonio reside en Panamá, el Ministerio Público puede solicitar una orden de captura en su contra.

13.     Adicionalmente, los bienes de Antonio y los hermanos Lauria en Venezuela han sido afectados por cuenta de los señalamientos de Pérez. Así, el 23 de mayo de 2019, uno de los fiscales que tuvo a su cargo el Caso Penal acudió ante el Tribunal 20° de Primera Instancia Estadal en Funciones de Control del Circuito Judicial Penal del Área Metropolitana de Caracas (el "Tribunal 20° de Primera Instancia"), para solicitar las medidas de prohibición de enajenar y gravar sobre los bienes que integran la herencia del causante Jesús Alberto Lauría Lesseur, incluyendo sobre bienes en los que Antonio tiene un interés. El 27 de mayo de 2019, el Tribunal 20° de Primera Instancia también decretó medidas cautelares de prohibición de enajenar y gravar sobre los bienes pertenecientes a los ciudadanos Antonio Enrique Lauría Pulgar, Andrés Ignacio Lauría Pulgar, Jesús Alberto Lauría Pulgar, Carmen Carolina Lauría Pulgar y Milagros Margarita del Coromoto Zapata de Pérez.

Conforme a 28 USC §1746(1), yo declaro, bajo pena de perjurio a tenor de las leyes de Estados Unidos de América, que lo que antecede es fiel y exacto.

Suscrito este día 27 de mayo  de 2022, en Puerto Ordaz, Estado Bolívar, Venezuela.

Por: _____

Freddy Aray Lárez

4

EXHIBIT"A"

I, BEATRIZ GARCÍA LÓPEZ, the undersigned, holder of identity card No. 5.541.222, Public Interpreter of the Bolivarian Republic of Venezuela in the English language, according to title granted by the Ministry of Justice (now Ministry of People's Power for Public Relations Interiors, Justice and Peace) dated November 24th, 1997, registered in the Main Public Registry Office of the Federal District, on May 5th, 1998, under No. 279, Folio 279, Volume 6, published in the Official Gazette of the Republic of Venezuela No.36,474, dated June 12th, 1998, registered in the First Court of First Instance in Civil, Commercial and Transit Matters of the Judicial District of the Metropolitan Area of Caracas, on August 10th, 1998, registered under file No.5691, and published in the Official Gazette of the Bolivarian Republic of Venezuela No. 37.330, dated November 22nd, 2001, due to name correction, I CERTIFY: That the legalizations written in English, which accompany the ANNEX SPECIAL JUDICIAL POWER GRANTED BY MR. ANTONIO ENRIQUE LAURÍA PULGAR in Spanish, which have been submitted to me for translation, faithfully translated into Spanish, reads as follows:

State of Florida
County of Dade
The previous instrument was sworn to and signed before me on August 22nd, 2019 by Antonio Enrique Lauría Pulgar, who presented identification. Type of identification presented:
C.I V-12.292.834.

[ILLEGIBLE SIGNATURE]
(Signature of Notary)

(WET STAMP: "PUBLIC NOTARY - STATE OF FLORIDA – ESPERANZA LÓPEZ - MY COMMISION EXPIRES DECEMBER 13TH, 2019 – No. FF910242".]

Teléfonos: (0416) 704-6061 - (0426) 412.05.44
E-mail: beatriz.garcia.traducciones@gmail.com
Blog: beatrizgarciatraduccionesblogspot.com

END OF TRANSLATION

"STATE OF FLORIDA

TRANSLATION FROM SPANISH INTO ENGLISH

Department of State
APOSTILLE
*(La Haye Convention on October 5, 1961)*

1. Country: United States of America

This public document

2. has been signed by <u>Esperanza López</u>

3. who acts in the capacity of a <u>Notary Public of State of Florida</u>

4. and bears the seal/stamp of a <u>Notary Public of State of Florida</u>

Certificate

5. in <u>Tallahassee, Florida</u>

6. on <u>August 23, 2019</u>

7. By the Secretary of State, State of Florida

8. Under No. 2019-104223

9. Seal: (GREAT SEAL OF THE STATE OF FLORIDA]

10. Signature: [SIGNED] Laurel M. Lee, Secretary of State

*************************************************************************************

It is a true and exact translation of the attached document, IN WITNESS WHEREOF, I signed and sealed this document in Caracas, on September six (6), two thousand and nineteen (2019).

[signed illegible and sealed]
Beatriz Garcia Lopez
Public Interpreter

END OF TRANSLATION

I, **Antonio Enrique Lauría Pulgar**, Venezuelan, of legal age, domiciled in the Republic of Panama and holder of identity card No. 12.292.834, by means of this document I declare that: "I confer **SPECIAL JUDICIAL POWER OF ATTORNEY**, broad and sufficient in Law, required and necessary, to the lawyers **FREDDY ARAY LÁREZ** and ~~DAVID CHANG COLL~~, ~~Venezuelans, of legal age, domiciled the first in~~ the city of Puerto Ordaz, State of Bolívar and the second in the city of Caracas, Capital District, of the Bolivarian Republic of Venezuela, holders of identity cards Nos. 12.893.591 and 16.224.130, and registered in the Lawyer's Social Welfare Institute under Nos. 79.420 and 144.235, so that, jointly, alternately or separately, they represent and support my rights and interests, in everything related to the processing of the ordinary criminal procedure, initiated due to the complaint filed on April 3rd, 2019, by the citizen **Daniela Hernández García**, holder of identity card No. 16.478.631, proceeding in her capacity as proxy of the citizen **Morelia Coromoto Pérez Presilla**, against me, among others, for the alleged commission of the crimes that she mentions as Fraud Procedural and Criminal Association, procedure which is being carried out by the Twenty-Eighth Prosecutor's Office (28) of the **Public Ministry with Full National Jurisdiction**, under file **No. MP-86. 604-2019**, currently under investigation. In this sense, the aforementioned lawyers are sufficiently empowered to: follow up on the criminal procedure in question both before the aforementioned representative of the Public Ministry and before any other Prosecutor appointed by the Office of the Attorney General of the Republic, the various criminal investigation police bodies and the Courts of the Bolivarian Republic of Venezuela with jurisdiction in criminal matters that may hear this matter or any incident related to it; participate in the preparatory phase of the aforementioned criminal procedure; request the performance of investigative procedures to clarify the facts, as well as the return of seized objects or goods that are not essential for the investigation and that they be delivered to them; attend the acts that must be carried out during the investigation; oppose and/or attempt the resources that may be appropriate against the decree of precautionary measures that deprive or restrict assets and/or rights over which they may have an interest directly and indirectly; oppose and answer the exceptions that may arise during the preparatory, intermediate or trial phases; be summoned and/or notified of the

procedural acts; as well as informed of the results of the process; be notified of the resolution of the Prosecutor of the Public Ministry ordering the filing of collections; be heard by the Court before deciding on the dismissal or before issuing any other decision that puts an end to the process or conditionally suspends it; challenge the dismissal or acquittal, challenge judicial officials, as well as representatives of the Public Ministry; Finally, in the exercise of this mandate, the pre-appointed lawyers are sufficiently authorized to exercise the broadest powers for the defense of my rights and interests during all the phases of the criminal procedure identified above, including exercising all the resources that may be applicable, both the ordinary ones such as the Extraordinary Cassation Appeal and the Constitutional Amparo. The special representatives designated in this act may substitute this power in whole or in part, reserving its exercise or not, as well as revoke the substitutions made, and in general, carry out and participate in all those judicial acts, acts and/or proceedings of investigation, and administrative acts provided for in our positive legal system and everything that they consider convenient or necessary for the best exercise and performance of their powers in safeguarding my rights and interests, since the aforementioned powers are not in any way exhaustive, but by on the contrary, merely enunciative.


[signed illegible]

STATE OF FLORIDA
COUNTY OF DADE
THE FORESPING INSTRUMENT WAS SWORN AND SUBSCRIBED TO BEFORE ME ON THIS 22nd day of August of 2019 BY Antonio Enrique Lauría Pulgar
PERSONALLY KNOWN TO ME [ ] OR PRODUCED IDENTIFICATION [x]
TYPE OR I.D. PRODUCE: C.I V-2.292.834
[signed illegible] (NOTARY SIGNATURE)
        (WET STAMP: "PUBLIC NOTARY - STATE OF FLORIDA – ESPERANZA LÓPEZ - MY
            COMMISION EXPIRES DECEMBER 13TH, 2019 – No. FF910242".]

END OF TRANSLATION



Nicola Bros Group - Gestión Consular -
9851 NW 58th ST Unit 108 Doral, Fl 33178
www.gestionconsular.com
Phone: (305)373.1107 EXT 2

| TRANSLATION FROM **"SPANISH"** INTO **"ENGLISH"** |
| --- |

### TRANSLATOR'S CERTIFICATE OF ACCURACY

I, the undersigned, CAROLINA SERPA, a Translator, do hereby depose and say: That I am a translator by profession of the Spanish and English languages; That I speak, read and write said languages; That I have carefully made the attached translation from original document in the Spanish language; and that said translation is a true and correct English version of such original, to the best of my knowledge, ability and belief.

CAROLINA SERPA
ATA Member No.276292
Translator / Traductor

STATE OF FLORIDA            )
COUNTY OF MIAMI-DADE        )

_____/

Sworn to and subscribed to before me By means of [x] physical Presence or [  ] online notarization this 2nd day of _____ May _____ 2022, by CAROLINA SERPA

MICHEL NICOLAS
NOTARY
My Comm. Expires
08/02/2025
No. HH 151130
STATE OF FLORIDA
PUBLIC

Notary's Signature

(X) Personally know to me
(  ) Produced identification
     If so, type of identification produced: _____.



American Translators Association
CORPORATE MEMBER



Yo, **BEATRIZ GARCÍA LÓPEZ**, quien suscribe, titular de la cédula de identidad No.5.541.222. Intérprete Público de la República Bolivariana de Venezuela en el idioma inglés, según título otorgado por el Ministerio de Justicia (ahora Ministerio del Poder Popular para Relaciones Interiores, Justicia y Paz) en fecha 24 de noviembre de 1997, registrado en la Oficina Principal de Registro Público del Distrito Federal, el 5 de mayo de 1998, bajo el No. 279, Folio 279, Tomo 6, publicado en la Gaceta Oficial de la República de Venezuela No.36.474, de fecha 12 de junio de 1998, inscrito en el Juzgado Primero de Primera Instancia en lo Civil, Mercantil y del Tránsito de la Circunscripción Judicial del Área Metropolitana de Caracas, en fecha 10 de agosto de 1998, donde quedó registrado bajo el expediente No.5691, y publicado nuevamente en la Gaceta Oficial de la República Bolivariana de Venezuela No.37.330, de fecha 22 de noviembre de 2001, por corrección de nombre, **CERTIFICO**: Que las legalizaciones redactadas en idioma inglés, que acompañan al **PODER JUDICIAL ESPECIAL ANEXO OTORGADO POR EL SR. ANTONIO ENRIQUE LAURÍA PULGAR** en idioma castellano, las cuales me han sido presentadas para su traducción, fielmente vertidas al idioma castellano, dicen textualmente lo siguiente:

Estado de Florida

Condado de Dade

El instrumento anterior fue jurado y suscrito ante mí el día 22 de agosto de 2019 por Antonio Enrique Lauría Pulgar, quien presentó identificación. Tipo de identificación presentada: C.I. V-12.292.834.

*[FIRMA ILEGIBLE]*

(Firma del Notario)

*[SELLO HÚMEDO: "NOTARIO PÚBLICO – ESTADO DE FLORIDA – ESPERANZA LÓPEZ – MI NOMBRAMIENTO VENCE EL 13 DE DICIEMBRE DE 2019 – No. FF910242".]*

Teléfonos: (0416) 704-6061 – (0426) 412-05-44 • E-mail: beatriz.garcia.traducciones@gmail.com • Blog: beatrizgarciatraducciones.blogspot.com



2

ESTADO DE FLORIDA

Departamento de Estado

APOSTILLE

(Convention de La Haye du 5 octobre 1961)

1. País: Estados Unidos de América

El presente documento público

2. ha sido firmado por Esperanza López

3. quien actúa en calidad de Notario Público de Florida

4. y está revestido del sello/timbre de Notario Público de Florida

Certificado

5. en Tallahassee, Florida

6. el día 23 de agosto de 2019

7. por la Secretaría de Estado, Estado de Florida

8. bajo el No. 2019-104223

9. Sello: *[GRAN SELLO DEL ESTADO DE FLORIDA]*

10. Firma: *[FIRMADO]* Laurel M. Lee, Secretaria de Estado

································································································

Es traducción fiel y exacta del documento anexo, **EN TESTIMONIO DE LO CUAL**, firmo y sello el presente documento en Caracas, el día seis (6) de septiembre de dos mil diecinueve (2019).

Beatriz García López

Intérprete Público

Yo, Antonio Enrique Lauría Pulgar, venezolano, mayor de edad, domiciliado en la República de Panamá y titular de la cédula de identidad No. 12.292.834, por medio del presente documento declaro que: "Confiero PODER JUDICIAL ESPECIAL, amplio y suficiente cuanto en Derecho se requiere y sea necesario, a los abogados FREDDY ARAY LÁREZ y DAVID CHANG COLL, venezolanos, mayores de edad, domiciliados el primero en la ciudad de Puerto Ordaz, Estado Bolívar y el segundo en la ciudad de Caracas, Distrito Capital, de la República Bolivariana de Venezuela, titulares de las cédulas de identidad Nos. 12.893.591 y 16.224.130, e inscritos en el Instituto de Previsión Social del Abogado bajo los Nos. 79.420 y 144.235, para que, conjunta, alterna o separadamente, representen y sostengan mis derechos e intereses, en todo lo relacionado con la tramitación del procedimiento penal ordinario, iniciado en razón a la denuncia presentada en fecha 3 de abril de 2019, por la ciudadana Daniela Hernández García, portadora de la cédula de identidad No. 16.478.631, procediendo en su carácter de apoderada de la ciudadana Morelia Coromoto Pérez Presilla, en mi contra, entre otros, por la presunta comisión de los delitos que menciona como Fraude Procesal y Asociación para Delinquir, procedimiento el cual viene siendo adelantando por la Fiscalía Vigésima Octava (28°) del Ministerio Público con Competencia Plena Nacional, bajo el expediente No. MP-86.604-2019, actualmente en fase de investigación. En tal sentido, quedan suficientemente facultados los prenombrados abogados para: hacer seguimiento al procedimiento penal en cuestión tanto por ante el referido representante del Ministerio Público como ante cualquier otro Fiscal designado por la Fiscalía General de la República, los diversos órganos de policía de investigaciones penales y los Tribunales de la República Bolivariana de Venezuela con competencia en materia penal que pudieran conocer del presente asunto o de alguna incidencia relacionada con el mismo; participar en la fase preparatoria del referido procedimiento penal; solicitar la práctica de diligencias de investigación para el esclarecimiento de los hechos, así como la devolución de objetos o bienes incautados que no sean imprescindibles para la



investigación y que los mismos les sean entregados; asistir a los actos que deban practicarse durante la investigación; oponerse y/o intentar los recursos a que hubiera lugar contra el decreto de medidas cautelares que priven o restrinjan bienes y/o derechos sobre los cuales pudiera tener interés de manera directa e indirecta; oponer y contestar las excepciones a que hubiera lugar durante las fases preparatoria, intermedia o de juicio; ser citados y/o notificados de los actos procesales; así como informados de los resultados del proceso; ser notificados de la resolución del Fiscal del Ministerio Público que ordene el archivo de los recaudos; ser oídos por el Tribunal antes de decidir acerca del sobreseimiento o antes de dictar cualquier otra decisión que ponga término al proceso o lo suspenda condicionalmente; impugnar el sobreseimiento o la sentencia absolutoria; recusar funcionarios judiciales, así como a los representantes del Ministerio Público; en fin, en ejercicio del presente mandato quedan suficientemente autorizados los prenombrados abogados para ejercer las más amplias facultades para la defensa de mis derechos e intereses durante todas las fases del procedimiento penal antes identificado, inclusive ejercer todos los recursos a que hubiere lugar, tanto los ordinarios como el Recurso Extraordinario de Casación y el Amparo Constitucional. Los apoderados especiales designados en este acto podrán sustituir este poder en su totalidad o en parte, reservándose o no su ejercicio, así como revocar las sustituciones hechas, y en general, hacer y participar en todos aquellos actos judiciales, actos y/o diligencias de investigación, y actos administrativos previstos en nuestro ordenamiento jurídico positivo y todo cuanto consideren conveniente o necesario para el mejor ejercicio y desempeño de sus facultades en resguardo de mis derechos e intereses, ya que las facultades antes señaladas no son en modo alguno taxativas, sino por el contrario, meramente enunciativas".

STATE OF FLORIDA
COUNTY OF DADE
THE FOREGOING INSTRUMENT WAS SWORN AND SUBSCRIBED TO BEFORE ME ON
THIS 22nd day of August 2019.
BY Antonio Enrique Laurla Pulgar
PERSONALLY KNOWN TO ME [ ] OR PRODUCED IDENTIFICATION [✓]
TYPE OR I.D. PRODUCE: C.I. V-12.292.834
                                        (NOTARY SIGNATURE)

INTÉRPRETE
PÚBLICO
INGLÉS · ESPAÑOL

ESPERANZA
LOPEZ
My Commission
Exp. Dec 13, 2019
No. FF919242
STATE OF FLORIDA

A black and white copy of this document is not official



# State of Florida

## Department of State

## APOSTILLE

(Convention de La Haye du 5 octobre 1961)

1. Country:   United States of America

   This public document

2. has been signed by      <u>Esperanza Lopez</u>

3. acting in the capacity of    <u>Notary Public of Florida</u>

4. bears the seal/stamp of    <u>Notary Public, State of Florida</u>

### Certified

5. at    <u>Tallahassee, Florida</u>

6. the    <u>Twenty-Third day of August, A.D., 2019</u>

7. by    <u>Secretary of State, State of Florida</u>

8. No.    <u>2019-104223</u>

9. Seal/Stamp:



10. Signature:

Secretary of State

Secretary of State

DSDE 99 (2/12)

This document contains a true watermark. Hold up to light to see "SAFE" and "VERIFY FIRST."

EXHIBIT"B"

DOCKET No. MP-86.604-2019

Honorable
**FORTY-FIFTH (45th) PROSECUTOR'S OFFICE**
**WITH NATIONAL JURISDICTION**
Your Office

[Partially legible Stamp]
[Illegible]
09.07.21
11:47 a.m.

_____

The undersigned, **DAVID CHANG COLL**, a Venezuelan, of legal age, of this domicile, a licensed attorney,  Identity Card No. V-16.224.130, and Bar No. 144.235, acting herein as legal counsel for Mr. **ANTONIO ENRIQUE LAURIA PULGAR**, as identified in  case number MP-86.604-2019, as accredited in the Power of Attorney that is on record and that we again file in a simple copy and attach hereto marked  "A", respectfully appear before you for the purpose of stating the following:

1.- The objective of the complainant and/or plaintiff in this case, pursuant to the effect of this superfluous complaint, is none other than to disavow and nullify three judgments issued in civil and criminal proceedings; <u>first, in the action for Distribution and Settlement of the assets of the Estate; second, issued in an action to annul the prenuptial agreements and recission due to injury, exercised by Morellia Perez Presilla, and the third, a dismissal issued when a complaint was filed by the referenced person for the alleged commission of the crimes of Use of the Forged Record and Signature which we will explain below.</u>

2.- In fact, on behalf of Mr. **Antonio Enrique Lauria Pulgar** we filed an action  for the Distribution and Settlement of the assets of the Estate against Mr. Lauria Pulgar, Carmen Carolina Lauria Pulgar and Morellia Coromoto Perez Presilla (jointly, the Lauria Succession) which was admitted on November 19, 2008.

3.- In said proceeding, Morellia Perez Presilla was represented by a Power of Attorney filed for said purposes by attorney Milagros Zapata, jointly with attorneys Alberto Baumeister Toledo, Manuel Baumeister A., Maria Alejandra Correa de Baumeister, Luis Fuenmayor.

4.- On August 11, 2010, the Twelfth Civil Court of First Instance for Commercial, Traffic and Banking Matters of the Judicial Circuit for the Caracas Metropolitan Area issued judgment granting the complaint that was filed, which sentence is filed in a simple copy with this brief, marked "B", and on November 24, 2010, issued an order finding the proceeding had ended and the distribution had concluded. None of the parties exercised any appeal whatsoever on that decision.

5.- On February 16, 2012, the Eleventh Civil Court of First Instance for Commercial , Traffic and Banking Matters of the Caracas Metropolitan Area, admits the complaint for annulment of the  Prenuptial Agreements and Recission due to damage filed by plaintiff Morellia Perez Presilla against the members of the Lauria Lesseur Succession.

6.- On August 8, 2017, the Ninth Civil Superior Court for Commercial, Traffic and Banking Matters of the Judicial Circuit for the Caracas Metropolitan Area, finds the action to nullify the Prenuptial Agreements and Recission due to damage of the Division and Settlement of the Estate is inadmissible considering that it contained motions, which proceedings are incompatible and exclude one another, which implied an inept joinder of claims in violation of provisions in Article 341 of the Code of Civil Procedure, which judgment is attached hereto in a simple copy marked "C".

7.- On November 22, 2017, the Civil Cassation Division of the Supreme Court of Justice dismisses the appeal that was filed by Ms. Morellia Perez Presilla, on the judgment issued by the

Ninth Superior Court on August 8, 2017; therefore, the judgment issued by the Ninth Superior Court is definitely firm, which judgment we attach hereto in a simple copy marked "D".

8.- Said action moved for:  (i) the absolute annulment of the prenuptial agreements  on considering that since it had not been registered in the branch office of the registry in the jurisdiction of the place where the marriage was held, was a defect that affected the entirety of the contract, and (ii) subsidiarily, the recission due to damages was filed, considering that upon enforcing the prenuptial agreements damages were suffered that far exceed the one fourth quota of what the plaintiff was due as her part of the partition.

9. - On May 21, 2010, the Fourth Court of First Instance, acting as the magistrate court of the Criminal Judicial Circuit of the Caracas Metropolitan Area, issued judgment dismissing the case filed against  Mr. Jesus Alberto Lauria Pulgar, finding that the crimes of the use of a false record and forgery of a signature had not been proven, which dismissal is attached hereto in a simple copy marked "E".

10.- Having considered the foregoing, we believe that in this criminal complaint, the same facts have been alleged which were already duly analyzed and decided in the referenced proceedings, are also the same facts argued in the superfluous complaint of procedural fraud filed in civil courts, which the plaintiff also abandoned. This shows that the facts of this complaint are not criminal in nature, and we request the declaration thereon.

In Caracas, Capital District, on the date it is filed.

/s/ Illegible   144.235

## CERTIFICATE OF ACCURACY

I, **Esther Cecilia Crespo**, an interpreter certified by the Administrative Office of the United States Courts, for and on behalf of **Liaison Services, Inc.**, hereby certify that the foregoing translation from Spanish into English, attached hereto and consisting of 3  page(s), is a true and correct translation of the original document.


Esther Cecilia Crespo
Miami, Florida

**Docket No. MP-86604-2019**                          [*Date stamp*] NOV 25 2019

**Director of the Office against Corruption of the Public Prosecutor's Office**

<u>**Hand delivered**</u>

We, Yesenia Piñango Mosquera and David Chang Coll, both Venezuelan, of legal age, of this domicile, holders of Identity Card Nos. 6,965,311 and 16,224,130, respectively, practicing attorneys, Members of the Bar, proceeding herein as legal counsel for Mr. **Antonio Enrique Lauria Pulgar**, as shown in Power of Attorney granted to the former before the Thirty-Ninth Notary Public for Libertador on May 27, 2008, entered under No.54, Volume 104, and to the latter, before Notary Esperanza López, a Notary Public in and for Dade County, State of Florida, United States of America, on the August 22, 2019 and Apostilled on August 23, 2019 before the Secretary of the State of Florida in the city of Tallahassee, Florida, United States of America, under No. 2019-104223, <u>respectfully come before you to file our considerations</u> regarding the accusation of an alleged procedural fraud filed by Mrs. Morellia Perez Presilla.  We do so based on the following terms:

I

<u>General Considerations</u>

The investigation began at the time of the accusation filed on April 3, 2019 by attorney Daniela Adriana Hernandez Garcia, in her capacity as counsel for  Morellia Coromoto Perez Presilla, a case presently before the Twenty-Eighth (28th) Prosecutor of the Public Prosecutor's Office with national jurisdiction, under No. MP-86,604-2019.

First,  we need to warn this authority that the plaintiff's goal in seeking the outcome of this pointless accusation is none other than to <u>disavow and nullify a Final Judgment on the division and settlement of an Estate</u>, wielding false arguments, the truth being, that maybe out of clumsiness or lack of diligence, those pleas were not pertinent and/or were not timely produced in those judicial proceedings, and in others, the actions were not legally appropriate.

The intent is also to invalidate a judgment issued on the annulment of the pre-nuptial agreements, and rescission due to prejudice used by the plaintiff, declaring the action inadmissible.

<u>Both judgments are final enforceable as  Res Judicata, and both are included in the criminal investigation conducted by us.</u>

Nevertheless, in mid-2018, the plaintiff filed a civil complaint on the partition and distribution of the Estate against the Plaintiff , arguing the same facts in the criminal complaint: that said case was not finalized, and that it was a sham among all parties involved; and that there had been a conspiracy among the defendants and collusion with the legal representatives appointed by citizen Morellia Perez Presilla.

Which is not true. Quite the opposite, the fraud in the civil ancillary proceeding and now in the criminal proceeding (identical writ and grounds), are a mean ploy wielded by the plaintiff <u>after she was sadly defeated in all of the judicial proceedings initiated by her until this date</u>.


II

Regarding the Civil Distribution Claim

In fact, the distribution and settlement of the Estate was done in compliance with the strictest procedural standards.

In said process all necessary stages were completed in order to guarantee to all  defendants, including the plaintiff, the opportunity to appear and to argue all claims they felt were in order; and, as for the plaintiff,  all claims raised in this process were decided in a timely manner.

Which requires that we conclude that in said procedure, the now plaintiff, had access to justice, was heard, and received timely decisions, that although these did not satisfy her claims, are undeniable evidence that her rights to due process and right to a defense were not violated.

Let us consider:

In fact, on behalf of Mr. Antonio Enrique Lauria Pulgar, with other designated attorneys, a lawsuit was filed for settlement of the Estate against Jesus Alberto Lauria Pulgar, Andres Ignacio Lauria Pulgar, Carmen Carolina Lauria Pulgar and Morellia Coromoto Perez Presilla, which was admitted on November 19, 2008 by the Eleventh Civil Court of First Instance for Commercial, Traffic and Banking Matters of the Caracas Metropolitan Area Judicial Circuit.

On April 5, 2010, Milagros Zapata personally appeared before the said court to file a simple copy of the Power of Attorney authenticated before the Twenty-Second Notary Public for Libertador in the Capital District on June 4, 2009, entered under No. 78, Volume 39, which accredited her representation of defendant Morellia Perez Presilla, jointly with lawyers Alberto Baumeister Toledo, Manuel Baumeister A., Maria Alejandra Correa de Baumeister, Luis Fuenmayor.

It must be noted that the said Power of Attorney was ample and sufficient, meaning that it was meant to represent her in: "any present issue or other that could arise, but expressly in all matters concerning my status as the spouse and legitimate heir of my legitimate husband Jesus Alberto Lauria Lesseur."

Needless to say, by application of Article 216, paragraph two of the Code of Civil Procedure (CPC) by the effect of that notice, Defendant Morellia Perez Presilla, was summoned in the process without further formalities.

On August 11, 2011, the Court issued judgment declaring the claim admissible.  None of the parties appealed the decision, and the decision being final, all parties were summoned to appoint an  Executor.

On November 4, 2010, Milagros Falcon, the executor appointed by the Eleventh Court, filed the executor's report for the record.

On November 24, 2010, the Court issued an order stating the conclusion of the procedure: "In view of the Executor's report filed on November fourth (4th) 2010 (…) inasmuch as the interested parties filed no objections, this Court, pursuant to the provisions in Article 785 of the Code of Civil Procedure finds this Distribution has ended.

None of the parties appealed the said decision.

On November 29, 2010, Milagros Zapata requested that the Court: (i) declare the invalidation of the distribution,  and (ii) restore the case to the status in which she would be appointed as defender *ad-litem* because, in her words, she was "executing a general power of attorney given to her by Defendant Morellia Perez Presilla."

On February 7, 2011, the referenced Court dismissed the appeal for reversal to restore the case, ratifying the enforceability of the Executor's appointment, the deposited report and the conclusion of the Distribution inasmuch as there were no objections thereto filed by the parties stating that  "without prejudice to the existence of other assets, as stated by Morellia Perez Presilla's attorney, that Distribution would have to be the object of another procedure."

There were no objections against this decision.

Therefore, the judgment issued on August 11, 2010, is final  and enforceable as *Res Judicata*. Thus, any decision that is sought contrary to this judgement, would be a violation of legal certainty and constitutional rights.

However, in the Estate Division proceeding that had concluded, the plaintiff filed an incidental proceeding claiming procedural fraud, arguing, as already stated, a conspiracy among by all the parties involved to preclude her right to a defense.

Now then, once the incidental proceeding was admitted,  the plaintiff should sign and begin to take the procedural steps to summon the attorney who represented her in that case, as well as other defendants, which did not happen; inasmuch as to date there has been no activity by the plaintiff taking any action that would be in furtherance thereof, which led this attorney to file before that Court a motion for prescription of the case based on the inaction of the plaintiff.

III

Regarding Annulment of the Prenuptial Agreements and Rescission due to Prejudice

On February 16, 2012, Eleventh Civil Court of First Instance for Commercial, Traffic and Banking Matters of the Caracas Metropolitan Area, heard the claim for the annulment of the prenuptial Agreements and Rescission due to Prejudice, sought by the claimant (now plaintiff) Morellia Perez Presilla against the members of the Lauria Lesseur Succession.

On August 8, 2017, the Ninth Civil Superior Court for Commercial, Traffic and Banking Matters of the Metropolitan Caracas area Judicial Circuit, declared the inadmissibility of the case for annulling the Prenuptial Agreements and recission based on damages in the settlement of the Estate, taking into account it included motions that are incompatible and exclude one another, which implied an inept joinder of claims in violation of Article 341 of the Code of Civil Procedure.

On November 22, 2017, the Civil Division of the Supreme court of Justice dismissed the appeal filed by citizen Morellia Perez Presilla on the Judgment of the Ninth Superior Court, thereby holding that the Judgment issued by the Ninth Superior Court on August 8, 2017 is final.

That action requested:  (i) Annulment of the Prenuptial Agreements because the contract had not been filed with the Subordinate Registry Office in the jurisdiction of the place where the wedding had been held, which was a defect affecting the overall agreement; and (ii) in an ancillary manner, she requested the rescission of the matter due to prejudice, because when considering that the Prenuptial Agreement would be enforced, the damage exceeds by far the one fourth of the quota that the plaintiff was entitled to as a portion of the estate.

These are basically the same grounds claimed in the incidental proceeding for procedural fraud that is being tried today with a criminal action, which proves that what the plaintiff was trying to obtain was a new ruling regarding the validity of the prenuptial agreement, the truth being that the Judgment given by the Civil Appeals Division is a final Judgment, it cannot be appealed, and any ruling on the grounds of the same facts submitted in that claim for annulment would attempt against Res Judicata in addition to altering the principle of legal certainty and guarantees.

IV

Absence of Legal Criminal Relevance in the Facts of the Accusation

In this criminal accusation,  the facts that have been claimed are exclusively of a civil nature, which were already duly analyzed and decided in the above referenced civil actions, which further benefit from Res Judicata. They are also the same facts claimed in the pointless action for procedural fraud in the civil action, the pursuit of which, was also dropped by the plaintiff; all of

which goes to prove that the facts set forth in this accusation are not standardized and hence, are not of a criminal nature.

In fact, based on all of the above, one clearly and unequivocally sees that the facts reported and investigated in the case at hand are facts of a civil nature, considered in both civil actions that concluded in final Judgments and therefore have the authority of Res Judicata, and do not fit in any criminal action in our current legislation, plus the fact that to date there are no convincing elements on record to support the perpetration of a crime by our client.

However, even though more than six months have passed since this investigation began, the Public Prosecutor's representative has yet to hold the pertinent conclusive act for this criminal investigation (which should be none other than dismissal of the case), causing obvious harm to our client, subjecting him to a criminal investigation for more than six months, to precautionary and preventive measures (like prohibitions to alienate and to encumber), incidentally, over property owned by our client, all of which is clearly a violation of Article 285 of the Constitution of the Bolivarian Republic of Venezuela, and Articles 2 and 10 of the Organic Law of the Public Prosecutors, while it is well known, that the Public Prosecutor's Office must act in good faith and uphold the Law, as well as the good course and transparency of criminal actions in all stages.

V

Request

By virtue of the foregoing, this representation comes before your competent authority in order to request, with all due respect, that the necessary corrective measures be taken to hasten and ensure the good course of the criminal action that concerns us, being that what is in order and appropriate under the law is for the Public Prosecutors' representative to request dismissal of the

case, since the facts of the accusation are not normal, hence they are not of a criminal nature, in accordance with provisions under Article 300, paragraph 2 of the Organic Code of Criminal Procedure.

It is Justice we seek in Caracas, on the date it is filed.

/s/ *illegible* 33981          /s/ illegible 144,235

---

## CERTIFICATE OF ACCURACY

I, **Esther Cecilia Crespo**, an interpreter certified by the Administrative Office of the United States Courts, for and on behalf of **Liaison Services, Inc.**, hereby certify that the foregoing translation from Spanish into English, attached hereto and consisting of 8 page(s), is a true and correct translation of the original document.

Esther Cecilia Crespo
Miami, Florida

Expediente Nro: **MP-86.604-2019**

Ciudadano:

**FISCAL CUADRAGÉSIMO QUINTO (45°) DEL MINISTERIO PÚBLICO CON COMPETENCIA PLENA NACIONAL.-**

Su Despacho. -

Yo, **DAVID E. CHANG COLL**, venezolano, mayor de edad, de este domicilio, abogado en ejercicio, titular de la cédula de identidad N° **V-16.224.130** e inscrito en el Instituto de Previsión social del Abogado (INPREABOGADO) bajo el Nro. **144.235**, procediendo en este acto en mi carácter de apoderado judicial especial del ciudadano **ANTONIO ENRIQUE LAURÍA PULGAR**, plenamente identificado en la causa signada bajo el N° **MP-86.604-2019**, carácter el mío que se evidencia de instrumento poder que riela en autos y que nos permitimos consignar nuevamente en copia simple anexo al presente escrito marcado con la letra ("A"), acudo muy respetuosamente en esta oportunidad ante su competente autoridad, a los fines de exponer lo siguiente:

1.- El objetivo de la accionante y/o denunciante en la presente causa, por efecto del ejercicio de esta irrita denuncia, no es otro que desconocer y dejar sin efecto, tres sentencias dictadas en procesos civiles y penales, <u>la primera, en la acción de partición y liquidación de comunidad hereditaria,; la segunda, dictada con ocasión a una acción de nulidad de las capitulaciones matrimoniales y rescisión por lesión, ejercida por la ciudadana Morellia Pérez Presilla y la tercera, un sobreseimiento dictado con ocasión a una denuncia presentada por la referida ciudadana por la presunta comisión de los delitos de Uso y Aprovechamiento de Acto Falso,</u> las cuales explicaremos de seguidamente.

2.- En efecto, en representación del ciudadano Antonio Enrique Lauria Pulgar, intentamos una demanda de partición y liquidación de la comunidad hereditaria contra los ciudadanos Jesús Alberto Lauria Pulgar, Andrés Ignacio

Lauria Pulgar, Carmen Carolina Lauria Pulgar y Morellia Coromoto Pérez Presilla, (en su conjunto, la Sucesión Lauria) la cual fue admitida el 19 de noviembre de 2008.

3.- En dicho proceso, Morellía Pérez Presilla, fue representada mediante poder consignado a tales efectos, por la ciudadana Milagros Zapata conjuntamente con los abogados Alberto Baumeister Toledo, Manuel Baumeister A., María Alejandra Correa de Baumeister, Luis Fuemayor.

4.- En fecha 11 de agosto de 2010, el Tribunal Duodécimo de Primera Instancia en lo Civil, Mercantil, Tránsito y Bancario de la Circunscripción Judicial del Área Metropolitana de Caracas, dicta sentencia declarando con lugar la demanda incoada, sentencia la cual consignamos en copia simple al presente escrito, marcado con la letra "B" y en fecha 24 de noviembre de 2010 dicta un auto, declarando terminado el proceso y concluida la partición. Contra dicha decisión ninguna de las partes ejerció recurso alguno.

5.- En fecha 16 de febrero de 2012, el Juzgado Undécimo de Primera Instancia en lo Civil, Mercantil, Tránsito y Bancario de la Circunscripción Judicial del Área Metropolitana de Caracas, admite la demanda de nulidad de capitulaciones y rescisión por lesión, intentada por la accionante Morellia Pérez Presilla contra los miembros de la sucesión Lauria Lesseur.

6.- En fecha 8 de agosto de 2017, el Juzgado Superior Noveno en Lo Civil, Mercantil, Tránsito y Bancario de la Circunscripción Judicial del Área Metropolitana de Caracas, declara la inadmisibilidad de la acción de nulidad de capitulaciones y rescisión por lesión de la partición y liquidación de herencia al considerar que la misma contenía peticiones cuyos procedimientos son incompatibles y excluyentes entre sí, lo que implicaba una inepta acumulación de pretensiones en contravención de lo establecido en el artículo 341 del Código de

Procedimiento Civil, sentencia la cual consignamos anexo al presente escrito en copia simple, marcado con la letra "C".

7.- En fecha 22 de noviembre de 2017, la Sala de Casación Civil del Tribunal Supremo de Justicia, declara sin lugar el recurso de casación ejercido por la ciudadana Morellia Pérez Presilla contra la sentencia dictada por el Tribunal Superior Noveno, quedando por tanto definitivamente firme la sentencia dictada por el Tribunal Superior Noveno en fecha 8 de agosto de 2017, sentencia la cual consignamos anexo al presente escrito en copia simple marcado con la letra "D".

8.- En dicha acción se demandó: (i) la nulidad absoluta de las capitulaciones matrimoniales al considerar que al no haber sido inscritas en la Oficina Subalterna del Registro de la Jurisdicción del lugar donde se celebró el matrimonio, constituía un vicio que afectaba la totalidad del contrato; y (ii) de manera subsidiaria, se demandó la rescisión por lesión, al considerar que al hacerse valer la eficacia de las capitulaciones matrimoniales, se constituyó una lesión que excede por mucho la cuota de un cuarto de lo que le correspondía a la accionante, de su parte de la partición.

10.- En fecha 21 de mayo de 2010 el Juzgado Cuarto de Primera Instancia en Funciones de Control del Circuito Judicial Penal del Área Metropolitana de Caracas, dicta sentencia declarando el sobreseimiento de la causa seguida contra el ciudadano Jesús Alberto Lauria Pulgar, por considerar no comprobados los delitos de uso y aprovechamiento de acto falso y falsificación de firma, sobreseimiento el cual consignamos anexo al presente escrito en copia simple, marcado con la letra "E"

11.- Visto lo anterior, consideramos que, en la presente denuncia penal, se han alegado los mismos hechos que ya fueron debidamente analizados y decididos en los procesos civiles citados, son también los mismos hechos alegados en la irrita denuncia de fraude procesal intentado por vía civil, cuyo trámite también

abandonó la accionante, lo cual demuestra que los hechos a los cuales se contrae la presente denuncia no revisten carácter penal, y así solicitamos sea declarado.

En la ciudad de Caracas, Distrito capital, a la fecha de su presentación.

**Expediente No. MP-86604-2019**

Ciudadano:

**Dirección contra la Corrupción del Ministerio Público**

Su despacho.-

Nosotros, Yesenia Piñango Mosquera y David Chang Coll, venezolanos, mayores de edad, de este domicilio, titulares de las cédulas de identidad Nos. 6.965.311 y 16.224.130, respectivamente, abogados en ejercicio, inscritos en el Inpreabogado bajo el No. 33.981 y 144.235, también respectivamente, procediendo en este acto con el carácter de apoderados judiciales del ciudadano Antonio Enrique Lauría Pulgar, tal y como consta de instrumentos poderes otorgados, respecto a la primera de las identificadas por ante la Notaría Pública Trigésima Novena del Municipio Libertador en fecha 27 de mayo de 2008, anotado bajo el No.54, Tomo 104, y respecto al segundo, por ante la Notario Esperanza López, Condado de Dade, Notario Público del Estado de la Florida, Estados Unidos de América, en fecha 22 de agosto de 2019 y apostillado en fecha 23 de agosto de 2019 por ante la secretaría del Estado de la Florida, en la ciudad de Tallahassee, Florida, Estados Unidos de América, bajo el Nro. 2019-104223, ante Usted, muy respetuosamente, acudimos para presentar nuestras consideraciones con ocasión a la denuncia por supuesto fraude procesal presentada por la ciudadana Morellia Pérez Presilla.

Ello, lo hacemos sobre la base de los siguientes términos:

I

Consideraciones Generales

La presente investigación se originó en razón a la denuncia presentada en fecha 3 de abril de 2019 por la abogada Daniela Adriana Hernández García, procediendo en su carácter de apoderada de la ciudadana Morellia Coromoto Pérez Presilla, procedimiento del cual conoce, actualmente, la Fiscalía Vigésima Octava (28°) del Ministerio Público con Competencia Plena Nacional, bajo el Nro. MP-86.604-2019.

Primeramente, se hace necesario alertar a esta autoridad de que el objetivo de la denunciante, por efecto del ejercicio de esta irrita denuncia, no es otro que desconocer y dejar sin efecto una sentencia de partición y liquidación de comunidad

hereditaria definitivamente firme, amparándose en falsas argumentaciones, cuando lo cierto es que, bien por torpeza y/o falta de diligencia, las defensas y excepciones que correspondían, no fueron oportunamente alegadas en esos procesos judiciales y en otras, las acciones ejercidas no eran, las que en derecho correspondían.

Se pretende, también, dejar sin efecto, una sentencia dictada en la acción de nulidad de las capitulaciones matrimoniales y rescisión por lesión, ejercida por la hoy denunciante, que declaró inadmisible la acción por ella ejercida.

Ambas sentencias se encuentran para la fecha, definitivamente firmes y con autoridad de cosa juzgada, y las mismas rielan insertas en la investigación penal que nos ocupa.

No obstante a ello, la hoy denunciante, presentó a mediados del año 2018 una incidencia de fraude procesal por vía civil, en el proceso de partición y liquidación de comunidad hereditaria, que se había ejercido en su contra, alegando los mismos hechos que hoy denuncia en vía penal: que dicho proceso no se encontraba terminado y que el mismo fue una simulación entre todos los involucrados, toda vez que existió una confabulación entre los co-demandados y una colusión con los apoderados judiciales designados por la ciudadana Morellia Pérez Presilla.

Lo cual no es cierto, toda vez que, por el contrario, la incidencia de fraude procesal opuesta por vía civil y ahora por vía penal (de forma idéntica por escrito y fundamentación), constituyen una vil maquinación de la hoy denunciante a la cual acude tras haber sido tristemente derrotada en todas las acciones judiciales intentadas hasta la fecha.

II

Respecto al proceso civil de partición.

En efecto, el proceso de partición y liquidación se tramitó con estricta sujeción a las normas procesales que eran pertinentes.

En el mismo, se cumplieron todas aquellas etapas necesarias para garantizarle a todos los co-demandados, incluyéndose a la hoy denunciante, la oportunidad de

comparecer y alegar las defensas y excepciones que consideraban, procedentes; y en lo que respecta a esta última, cada una de las solicitudes elevadas en este proceso, <u>fueron oportunamente decididas.</u>

<u>Siendo forzoso concluir que, en dicho proceso, la accionante, hoy denunciante, tuvo acceso a la justicia, fue oída y obtuvo pronunciamientos oportunos, que si bien, evidentemente, no satisfizo sus pretensiones, es prueba irrefutable de que no se le violó, ni vulneró, su derecho a la defensa y al debido proceso.</u>

Veamos:

En efecto, en representación del ciudadano Antonio Enrique Lauria Pulgar se intentó conjuntamente con otros abogados designados, una demanda de partición y liquidación de la comunidad hereditaria contra los ciudadanos Jesús Alberto Lauria Pulgar, Andrés Ignacio Lauria Pulgar, Carmen Carolina Lauria Pulgar y Morellia Coromoto Pérez Presilla, la cual fue admitida el <u>19 de noviembre de 2008</u> por el Tribunal Undécimo de Primera Instancia en lo Civil, Mercantil, Tránsito y Bancario de la Circunscripción Judicial del Área Metropolitana de Caracas.

En fecha <u>5 de abril de 2010</u>, compareció ante dicho Tribunal la ciudadana Milagros Zapata, a los fines de consignar copia simple del poder autenticado por ante la Notaría Pública Vigésima Segunda del Municipio Libertador del Distrito Capital, en fecha <u>4 de junio de 2009</u> anotado bajo el No. 78, Tomo 39, el cual acreditaba la representación de la co-demandada Morellia Pérez Presilla, conjuntamente con los abogados Alberto Baumeister Toledo, Manuel Baumeister A., María Alejandra Correa de Baumeister, Luis Fuemayor.

Es de observar, que dicho poder era un poder amplio y suficiente, vale decir, para representarla, en: "todo asunto que tenga o se me presente, pero expresamente en todo lo relacionado con mi condición de cónyuge y heredera legitima de mi legitimo esposo Jesús Alberto Lauria Lesseur".

Huelga decir, que por aplicación del párrafo segundo del artículo 216 del Código de Procedimiento Civil [CPC] por efecto de dicha diligencia, la co-



demandada Morellia Pérez Presilla, quedó entonces citada en el proceso, sin más
formalidad.

En fecha 11 de agosto de 2011, dicho Tribunal dictó sentencia declarando con
lugar la demanda incoada. Contra dicha decisión, ninguna de las partes ejerció
recurso, por lo que quedando la misma definitivamente firme, todas las partes
quedaron emplazadas para la designación del partidor.

En fecha 4 de noviembre de 2010, la partidora designada Milagros Falcón por
el Tribunal Undécimo, consigna el informe del partidor.

En fecha 24 de noviembre de 2010, dicho Tribunal dictó un auto, declarando
terminado el proceso señalando: "visto el informe de partición presentado en fecha
cuatro (4) de noviembre de 2010 (...) por cuanto del mismo no se hizo objeción por
los interesados este Tribunal, de conformidad con lo establecido en el artículo 785 del
Código de Procedimiento Civil, declara concluida la presente partición".

Contra dicha decisión ninguna de las partes ejerció recurso alguno.

En fecha 29 de noviembre de 2010, Milagros Zapata solicitó al Tribunal: (i)
declarar irrita la consignación de la partición y (ii) la reposición de la causa al estado
de que se le designara defensor ad-litem por ser, según su decir: "ejecutante de un
poder general de la co-demandada Morellia Pérez Presilla".

En fecha 7 de febrero de 2011, el Tribunal citado desestimó la petición de
reposición, ratificando la eficacia y validez de la designación del partidor, de la
consignación del informe y la conclusión de la partición por ausencia de objeción de
alguna de las partes interesadas, expresando que, lo decidido era: "sin perjuicio a la
eventual existencia de otros bienes, como lo alega la representación de Morellia Pérez
Presilla, para cuya partición, de ser el caso, sería objeto de otro proceso".

Contra dicha decisión, no se ejerció recurso alguno.

Es decir, el proceso de partición y liquidación de herencia quedó firme, el
fallo dictado en fecha 11 de agosto de 2010 adquirió la fuerza de cosa juzgada, por lo



que, cualquier decisión que se pretenda, contraria a la que ya fue objetó en este proceso, sería atentar contra la seguridad jurídica y a las garantías constitucionales.

No obstante, la hoy denunciante, presentó en aquel proceso de partición terminado, una incidencia de fraude procesal, alegando como ya señalamos, una confabulación de todos los involucrados para menoscabar su derecho a la defensa.

Pues bien, una vez admitida la incidencia de fraude procesal, debía la accionante ejecutar e impulsar las gestiones procesales para lograr la citación tanto de la abogada que la representó en el proceso de partición, así como de otros de los demandados, lo cual no ocurrió toda vez que a la fecha ha pasado más de un año sin que la parte accionante llevará a cabo algún acto destinado a impulsar el procedimiento, lo cual conllevó a que esta representación solicitará ante dicha instancia la declaratoria de perención de la instancia dado el latente desinterés de la accionante en continuar e impulsar la tramitación de dicha denuncia.

III

Respecto al proceso de nulidad de capitulaciones matrimoniales
y rescisión por lesión.

En fecha 16 de febrero de 2012, el Juzgado Undécimo de Primera Instancia en lo Civil, Mercantil, Tránsito y Bancario de la Circunscripción Judicial del Área Metropolitana de Caracas, admitió la demanda de nulidad de capitulaciones y rescisión por lesión, intentada por la accionante (hoy denunciante) Morellia Pérez Presilla contra los miembros de la sucesión Lauria Lesseur.

En fecha 8 de agosto de 2017, el Juzgado Superior Noveno en Lo Civil, Mercantil, Tránsito y Bancario de la Circunscripción Judicial del Área Metropolitaná de Caracas, declaró la inadmisibilidad de la acción de nulidad de capitulaciones y rescisión por lesión de la partición y liquidación de herencia, al considerar que la misma contenía peticiones cuyos procedimientos son incompatibles y excluyentes



entre sí, lo que implicaba una inepta acumulación de pretensiones en contravención de lo establecido en el artículo 341 del Código de Procedimiento Civil.

En fecha 22 de noviembre de 2017, la Sala Civil del Tribunal Supremo de Justicia, declaró sin lugar el recurso de casación ejercido por la ciudadana Morellia Pérez Presilla contra la sentencia dictada por el Tribunal Superior Noveno, quedando por tanto definitivamente firme la sentencia dictada por el Tribunal Superior Noveno en fecha 8 de agosto de 2017.

En dicha acción se demandó: (i) la nulidad absoluta de las capitulaciones matrimoniales al considerar que al no haber sido inscritas en la Oficina Subalterna del Registro de la Jurisdicción del lugar donde se celebró el matrimonio, constituía un vicio que afectaba la totalidad del contrato; y (ii) de manera subsidiaria, se demandó la rescisión por lesión, al considerar que al hacerse valer la eficacia de las capitulaciones matrimoniales, se constituyó una lesión que excede por mucho la cuota de un cuarto de lo que le correspondía a la accionante, de su parte de la partición.

Es decir, son básicamente los mismos fundamentos señalados en la incidencia de fraude procesal, que se intenta hoy por vía penal, lo cual demuestra, que lo que se pretendía era obtener un nuevo pronunciamiento respecto a la validez de las capitulaciones matrimoniales, cuando lo cierto es, que la sentencia dictada por la Sala de Casación Civil, es una sentencia definitiva, contra la cual no cabe recurso alguno, por lo que cualquier pronunciamiento que se encuentre fundamentado en los mismos hechos que fueron sometidos a aquélla pretensión de nulidad, atentaría contra la institución de la cosa juzgada además de alterar el principio de seguridad y garantía jurídica.

IV

De la ausencia de relevancia jurídico penal de los hechos denunciados

En esta denuncia penal, se han alegado los mismos hechos de naturaleza exclusivamente civil, que ya fueron debidamente analizados y decididos en los procesos civiles citados, y que además gozan de la protección de la institución de la cosa juzgada. Son también los mismos hechos alegados en el írrito procedimiento por fraude procesal intentado por vía civil, cuyo trámite también abandonó la accionante,

todo lo cual demuestra que los hechos a los cuales se contrae la presente denuncia no son típicos, y por ende, no revisten carácter penal.

En efecto, de lo expuesto precedentemente, se aprecia de manera clara e inequívoca que los hechos denunciados e investigados en la causa que nos ocupa corresponden a hechos de naturaleza civil ventilados en sendos procedimientos civiles concluidos mediante sentencias definitivamente firmes, y por ende, con autorizad de cosa juzgada, por lo que no encuadran dentro de ningún tipo penal existente en nuestra legislación sustantiva vigente, aunado a que a la presente fecha, no reposa en autos ningún elemento de convicción que acredite la comisión de delito alguno por parte de nuestro representado.

No obstante, a pesar de haber transcurrido más de seis meses desde el inicio de la presente investigación, todavía la representación del Ministerio Público no ha dictado el correspondiente acto conclusivo de la investigación penal (que no debe ser otro que el sobreseimiento de la presente causa), lo que ha dado lugar a un evidente perjuicio a nuestro representado, al mantenerlo sometido a una investigación penal desde hace más de seis meses, mediando dicho sea de paso, medidas cautelares de aseguramiento preventivo (como prohibiciones de enajenar y gravar) sobre bienes propiedad de nuestro representado, todo lo cual constituye una evidente contravención a lo establecido en el artículo 285 de la Constitución de la República Bolivariana de Venezuela, y a los artículos 2 y 10 de la Ley Orgánica del Ministerio Público, ya que como es bien sabido, el Ministerio Público debe actuar de buena fe y ser garante de las leyes, así como de la buena marcha y transparencia de los procedimientos penales en cada una de sus fases.

V

Petitorio

En virtud de lo expuesto precedentemente, esta representación acude ante su competente autoridad a objeto de solicitar, con el debido respeto, que se tomen los correctivos necesarios a los fines de garantizar la celeridad y buena marcha del procedimiento penal que nos ocupa, siendo lo procedente y ajustado a Derecho, que

la representación del Ministerio Público solicite el sobreseimiento de la presente causa, en virtud de que los hechos objeto de la denuncia no son típicos, y por ende, no reviste carácter penal, de conformidad con lo establecido en el numeral 2 del artículo 300 del Código Orgánico Procesal Penal.

Es Justicia que esperamos en la Ciudad de Caracas a la fecha de su presentación.

EXHIBIT "2"

## UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE No.  22-20836-MC-ALTONAGA/TORRES

In the Motion of

ANTONIO LAURlA PULGAR

      Applicant,

Pursuant to 28 U.S.C § 1782,
Application for Assistance in
Obtaining Evidence for Use in
International Proceedings.

_____/

## SECOND DECLARATION OF PROFESSOR CARLOS ENRIQUE MOURIÑO VAQUERO IN SUPPORT OF THE *EX PARTE* APPLICATION FOR <u>JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. §1782</u>

The undersigned, Carlos Enrique Mouriño Vaquero, states the following:

1.      I am of legal age and have personal knowledge of the facts I declare hereunder.

2.      As I indicated in my first declaration, I am a licensed attorney, admitted to practice the profession in the Bolivarian Republic of Venezuela ("Venezuela"). Attached hereto is a copy of my *curriculum vitae.*

3.      I am filing this declaration in support of the request for judicial assistance filed by Antonio Lauría Pulgar (hereinafter "Antonio"), pursuant to section 28 U.S.C § 1782 (the "Request"). Antonio requested and obtained the issuance of a subpoena *duces tecum* to obtain the declaration of Mrs. Morelia Coromoto Perez Presilla ("Perez"), an individual, located in Broward County, Florida, USA.

4.      Perez is the alleged complainant in case MP-86604-2019, regarding the criminal investigation currently before the 45th Prosecutor's Office with National Jurisdiction (the "45th

Prosecutors Office"), against Antonio and his siblings, Andrés, Jesús and Carmen Lauría Pulgar (jointly, the "Lauria Siblings"); and attorney Milagros Margarita del Coromoto Zapata ("Zapata"). Hereunder, I will refer to this investigation as the "Criminal Case."

5.      In the course of the Criminal Case, the 20th Criminal State Court of First Instance for the Judicial Circuit of the Metropolitan Area of Caracas ("20th Court of First Instance") has provided the magistrate decisions on the proceedings of the 45th Prosecutor's Office, including on the adoption of measures that affect the subjective rights of the parties in the Criminal Case.

6.      Antonio's attorneys, in the United States of America ("USA"), have requested that I supplement my legal opinion, signed on January 14, 2022, regarding the feasibility of his application under Venezuelan law. Specifically, I have been asked to provide an opinion on the statements made by attorney Hernando Diaz-Candia ("Diaz-Candia"), in support of a motion by Perez, for this honorable Court to vacate its decision that allows for this application.

7.      The attorneys have also requested a declaration on the validity of an email that was provided to the Court by Perez, through a declaration of her attorney, Doris Scarlet Piñero Silva ("Piñero Silva"). In this email dated May 19, 2022, the prosecutor for the case allegedly informed that "Morellia (sic) Coromoto Perez Presilla (sic) is not (sic) authorized to give information on the referenced complaint."

8.       For said purpose, Antonio's attorneys in the US provided a copy to me of the declaration signed in this case by Diaz-Candia and Piñero Silva.

9.      Additionally, Antonio's defense attorney in Venezuela, Professor Freddy Aray ("Aray"), has informed me that, as requested by the Prosecutor's Office in the Criminal Case, the 20th Court issued a precautionary measure barring the encumbrance and transfer of the assets of

the Lauria Siblings and Zapata. According to Aray, this court ordered a similar measure with respect to all  assets that are part of Antonio's father Estate, Mr. Jesús Alberto Lauria Lesseur (deceased).

10.     To date, Perez has not appeared as the complainant in the Criminal Case and has not filed her own personal accusation or adhered to the accusation of the Public Prosecutor.

11.     In my opinion, and as I will state hereunder, I disagree with Diaz-Candia regarding three fundamental aspects, to wit: (i) the authority that Antonio has to obtain evidence for the Criminal Case, (ii)  Perez's capacity as a party in the Criminal Case. (iii) Perez's impossibility to make statements in the Criminal Case, under Venezuelan law under the confidentiality of criminal investigations. Additionally, in my opinion, the email attached to the declaration of Piñero Silva has no validity whatsoever under Venezuelan  law.

## I.      Antonio has the right to obtain evidence, in spite of not having been charged by the 45th Prosecutor's Office.

12.     In his declaration, Diaz-Candia argues that Antonio cannot obtain evidence pertaining to the Criminal Case, because he has not been charged by the 45th Prosecutor's Office. However, in Venezuela, the guarantee of the right to a defense and to due process are constitutional in nature, and therefore, in the case at hand, applicable to all stages of the criminal proceeding. In fact, Article 49 of the Constitution of the Bolivarian Republic of Venezuela, does not differentiate or limit this right or condition that to the fact that the person complained of has been charged or not by the Prosecutor's Office, or is  limited to a  specific procedural or investigative phase. With regard thereto, the referenced Article 49 provides:

> *Due process shall apply to all judicial and administrative proceedings; therefore:*

***Defense and legal assistance are inalienable rights in every stage and degree of investigation and the process. Everyone has the right to be notified of the charges for which he is being investigated, to have access to evidence and to have adequate time and the means for his defense...*** ) (emphasis added)

13.     The legal provisions, including the ones in the Organic Code of Criminal Procedure cited by Diaz-Candia in his statement, provide standing for the refenced Article 49 of the Constitution, and thus, must be construed as such, particularly when the person under investigation has rights and interests that are already being affected by the Criminal Case. With regard thereto, Array has informed me that Antonio's assets in Venezuela have been the object of a precautionary measure barring transfer and encumbrance issued by the 20th Court of First Instance.

14.     Jurisprudence of the Constitutional Division of the Supreme Court of Justice has also remarked that, in exercising the constitutional rights to a defense and due process, the person affected by a judicial proceeding, such as in the alleged case of Antonio in the Criminal Case, he must have available "the adequate means to impose his defenses" and with the possibility that his arguments and evidence "will be heard and analyzed in a timely manner." With regard thereto, judgment number 5, dated January 24, 2001, of the referenced Division may  be consulted.[1]

15.     In fact, the Venezuelan Organic Code of Criminal Procedure allows the person who has been complained of but not charged, to request and obtain evidence to prepare his defense. With regard thereto, Article 12 in this Code states that "[t]he defense is an inviolable right in every stage and degree of the process" (emphasis added).  Likewise, Article 287 of the Code recognizes the authority to request and obtain evidence not only belong to "the accused", but also to "**the persons who have intervened in the proceeding and their representatives**" (emphasis added).[2]

---

[1] This judgment is final pursuant to provisions in Article s 335 y 336 of the Constitution. *See also* judgment No. 106 dated February  11, 2004.

[2] With regard thereto, pursuant to a judgment dated April 25, 2007, issued in the case of Alexis Alfredo Rivero Pereira, the Constitutional Division upheld that "in the preparatory phase of the criminal procedure, the parties will collect, respectively, all convincing elements that allow establishing the prosecutor's accusation and the defense of the

16.     On this subject, the Constitutional Division of the Supreme Court of Justice has indicated there are other procedural acts of the Prosecutor's Office in criminal proceedings in Venezuela, in the investigative or jurisdictional phase, that can give rise to the activation of the rights stemming from the filing of charges. With regard thereto, the Constitutional Division ruled as follows in Judgment No. 1381, dated October 30, 2009:

> As stated above, **the condition as defendant can be acquired through any activity of criminal investigation that unequivocally leads to considering a person as the perpetrator or involved in a punishable act, and within such activity the communication of the fact to the person summoned in the hearing provided in Article 250 of the Organic Code of Criminal Procedure, which, therefore, fits in the hypothesis described in the text of Article 124 of the Organic Code of Criminal Procedure**.

> To accept the reduced posture argued by the plaintiff, to wit, that the condition as a defendant is only and exclusively acquired when the punishable act is communicated to the person in a formal setting in the seat of the Public Prosecutor's Office (that is, to condition the material defense to the practice of a "formal" charge  in the Public Prosecutor's Office), would imply an erroneous interpretation of the first paragraph in Article 130 of the Organic Code of Criminal Procedure, based on a blind execution that lacks any sense whatsoever, that imposes a wrongful obstacle for exercising the constitutional and legal rights and guarantees of the defendant (emphasis in the original).

17.     In this case, Antonio is a subject investigated by the 45th Prosecutor's Office and his assets have been the object of precautionary measures by the 20th Court of First Instance. With regard thereto, there have been acts against Antonio that must allow him to exercise those rights stemming from formulation of the charge as provided in Article 49 of the Constitution, in concurrence with Articles 12 and 287 of the Organic Code of Criminal Procedure.

---

defendant, wherein the defendant, the persons who have intervened in the procedure and their representatives, may request the prosecutor to hold proceedings to explain the facts. . ." (emphasis added).

18.     The procedural situation Antonio has been subjected to carries an indication on its possible criminal liability and he must be guaranteed his right previously established and to provide the necessary evidence to exercise his right to a defense in the Criminal Case, including Perez's declaration. This, in spite of the fact that he has not been charged by the 45th Prosecutor's Office.

**II.     Perez is not a "Party" in the Criminal Case.**

19.     Contrary to what Díaz-Candia stated in his declaration, Perez is not a "party" to the Criminal Case. Pursuant to provisions in Article of 285 paragraph 4 of the Constitution, the Public Prosecutor's Offices are competent to "*Exercise the criminal action on behalf of the State*" and according to provisions in Article 273 of the Venezuelan Organic Code of Criminal Procedure, "**The complainant is not a party to the proceeding**, *but if there is falsehood or bad faith in the complaint, he or the person who does so, will be liable according to law.*" (added emphasis)

20.     Although Perez filed a complaint against Antonio, to be a party in the Criminal Case, it is necessary that she file a complaint, file her own accusation, or adhere to the accusation of the Prosecutor's Office. According to what Professor Aray has informed me, this has not happened. Furthermore, inasmuch as the Criminal Case involves the investigation of public action crimes, Perez cannot displace the Public Prosecutor from exercising the criminal action.

21.     Inasmuch as Antonio has not been formally charged, Perez cannot be considered a party in the Criminal Case pursuant to provisions of Article 309 of the Organic Procedural Code. This Article provides that after filing the complaint, whomever has appeared as a victim in the criminal proceeding, may "adhere to the Prosecutor's complaint or file their own complaint." And **"[t]he admission of the victim's own complaint at the end of the preliminary hearing, will**

**grant status as a plaintiff** in the event it has not been disputed previously during the preparatory phase." (emphasis added). By virtue thereof, it is wrong to grant Perez standing as a "party", as well as to argue that such condition prevents her from testifying about the facts or circumstances that she knows and that triggered the Criminal Case.

### III.   In Venezuela Pérez has no legal obstacles for providing a statement under the application.

22.   Additionally, Diaz-Candia is wrong when considering that the confidentiality or privacy of the investigation prevents Perez from declaring and delivering information and documents to Antonio for the preparation of his defense.

23.   In the instant case, the application does not involve access to the Prosecutor's investigative records. In fact, since Perez is not a party to the Criminal Case, she should not be in possession of said records.

24.   Pursuant to provisions in  Article 286 of the Organic Code of Criminal Procedure, the defense extends to the records and investigative records of the Public Prosecutor's Office. Additionally, the records are confidential "for third parties", but not for those under investigation, charged or accused. In fact, the referenced Article 286 has been interpreted by the Constitutional Division of the Supreme Court of Justice, to indicate that, in spite of the confidentiality of the investigation, **the Public Prosecutor's Office has the duty to inform the defense of the proceedings that have been performed.**[3]

25.   Antonio, as a person investigated in the Criminal Case is not a third party, and with respect thereto, the exception on confidentiality does not apply.

---

[3] *See* Judgment of the Court N° 1.927 dated  July 14, 2003, Case: *Tayron Robinson Aristigueta Ramirez.*

26.     But it is important to note that neither this provision, nor any other legal source of Venezuelan law, including the provisions cited by the email attached to the declaration of Piñero Silva, extends the confidentiality of the  investigation to bar a witness from declaring on facts or circumstances that are of his personal knowledge. Therefore, for purposes of discussion, the confidentiality of the investigation, had it been agreed to by the Prosecutor's Office, could prevent Perez from providing Antonio with records of the proceedings of the Prosecutor's Office in the Criminal Case (which, I repeat, should not be in her possession ). However, confidentiality does not prevent Pérez from testifying about  facts that were the grounds for the criminal complaint or prevent Pérez from producing Antonio the documents that are in her possession related to the  accusations of her criminal complaint.

27.     In his declaration, Díaz-Candia also errs by stating that, if Perez provides a declaration in response to Antonio's, she could incur in obstruction of justice. In Venezuela, pursuant to Article 131 of the Constitution, "Every person has the duty to comply and abide by this Constitution, the laws and other acts that in the performance of their duties are issued by the government." Thus, if Perez provides her declaration in compliance with a judicial court order of the US Federal District Court, she would be in compliance with a constitutional duty and should not be penalized therefor, by abiding with a competent court order. Perez, also, would not be acting with intent, and only for a case that cannot be attributable to her, in protection of Antonio's rights. It would be difficult to incur in the alleged obstruction of justice.

28.     On the contrary, Perez would be fulfilling her constitutional duty to collaborate with justice, by provoking the production of evidence that generates a better understanding of the Prosecutor's Office and the courts, as to the Criminal Case.

29.     Likewise, the principle of the territoriality of criminal law would be a barrier for the exercise of the alleged criminal action against Perez for obstruction of justice. This principle is set forth in Article 3 of the Venezuelan Criminal Code, under which *"... Anyone who commits a crime or a fault in the geographic space of the Republic, will be punished in accordance with Venezuelan law."*

**IV.     The invalidity of the alleged email allegedly issued by the 45th Prosecutors Office**

30.     In my opinion, the May 19, 2022 email that Piñero Silva attaches to her statement, to be considered by a court in the US, has no validity under Venezuelan law.

31.     Article 16, paragraph 7, of the Organic Law on the Public Prosecutor's Office (Prosecutors Office) of the Bolivarian Republic of Venezuela establishes that the Public Prosecutor's Office is responsible for issuing communications or executing letters rogatory or other requests for mutual assistance in criminal matters among countries, in this case between Venezuela and the US. With regard thereto, a communication such as the email, should be addressed directly to the US by the Public Prosecutor's Office,  and not through a third party.

32.     The email is also invalid based on the  provisions of the Organic Code of Criminal Procedure, in Articles 108, paragraph 17 and 201, both inclusive, as well as by the Inter-American Convention on Letters Rogatory, of January 30, 1975 , ratified by Venezuela on December 8, 1984. According to these standards, the documents of the Venezuelan authorities, which are destined to US court, must be legalized by a consular officer of the requesting country appointed therefor. Also, the official document must be duly translated to the language of the requested country, by a certified public translator.

33.     Furthermore, under the Law Approving the Convention between the Republic of Venezuela and the Government of the United States of America on Mutual Legal Assistance in

Criminal Matters, Article 2, paragraph 2, the Venezuelan central authority to send this type of communications is the Attorney General of Venezuela, which according to its organizational structure, the 45th Prosecutor's Office, directly or indirectly cannot transmit this type of communication to a US court.

34.     Likewise, the email, although it is a message of information allegedly issued  by the 45th Prosecutor's Office, does not fulfill the formal requirements of the Law on Data Messages and Electronic Signatures published in Official Gazette No. 37,148 dated February 28, 2001. These requirements work to guarantee the integrity and authenticity of electronic communications in Venezuela.

35.     Specifically, the email is not signed electronically under the parameters in Article 16 of this law; and Article 17 of the law notes that *"The Electronic Signature that does not comply with the requirements indicated in the previous paragraph will not have the legal effects that are granted in this Chapter."*

36.     Likewise, the email does not meet the criteria that apply to judicial acts issued by electronic means, including those set by the Administrative Law Division of the Supreme Court of Justice, in judgment 294 of April 6, 2017. In this judgment, the Supreme Court affirmed, under the provisions of Article 1,363 of the Civil Code, in concurrence with Article 429 of the Code of Civil Procedure, that the act, official letter, record, procedural act or sentence, must be completely reproduced, copied or attached to the email.[4]

---

[4] The following have also made statements on the matter,  Infogobierno Law, published in Official Gazette number 40,274, dated October 17, 2021; the Data Message and Electronic Signatures Law published in Official Gazette No. 37,148 dated February 28, 2001; and Decision 2021-001 of the Supreme Court of Justice en banc, dated July 9, 2021 which includes the "Guidelines for the Signature and Publication of Decisions Signed Digitally, Issuance of Summonses and Electronic Notifications, and the Issuance of Simple or Certified Copies by Email".

37.    In this case, the email does not reproduce the entirety of the official statement of the 45th Prosecutor's Office. The email refers to a "proceeding done before this prosecutor's representative" without reproducing the content of such proceeding and thereafter, summarizes the information allegedly originating in the 45th Prosecutor's Office. Thus, it doesn't specify the factual basis that is the reason for the decision, or the matter it intends to resolve.

38.    I also understand that the case number that appears in the email is wrong.

39.    By virtue thereof, I believe that the email attached to Piñero Silva's declaration, has no legal value and its authenticity cannot be verified under the laws and regulations of Venezuela.

40.    But even if this email in fact came from the 45th Prosecutor's Office, I must note that it does not bar Perez from giving information of the facts or circumstances she knows and that are relevant for Antonio's preparation of the defense. The email or legal provision cited in said email, cannot have this effect under the laws of Venezuela.

41.    Having considered the foregoing, under the laws of Venezuela, I believe Perez,  is able to respond Antonio's application.

42.    Pursuant to 28 USC §1746(1), I declare, under penalty of perjury pursuant to the laws of the United States of America, that the foregoing is true and accurate.

Signed May 27, 2022, in Miami, Florida.


By:   _____

        Carlos Enrique Mouriño Vaquero

**CERTIFICATE OF ACCURACY**

I, **Esther Cecilia Crespo**, an interpreter certified by the Administrative Office of the United States Courts, for and on behalf of **Liaison Services, Inc.**, hereby certify that the foregoing translation from Spanish into English, attached hereto and consisting of 11  page(s), is a true and correct translation of the original document.

Esther Cecilia Crespo
Miami, Florida

**CORTE DISTRITAL DE LOS ESTADOS UNIDOS PARA EL DISTRITO SUR DE FLORIDA**

**CASO No. 22-20836-MC-ALTONAGA/TORRE**

En la Aplicación de

ANTONIO LAURÍA PULGAR

    Solicitante,

Conforme con 28 U.S.C § 1782,
Solicitud de Asistencia en la Obtención
De Evidencia para Uso en Procesos Internacionales.
_____/

**SEGUNDA DECLARACIÓN DEL PROFESOR CARLOS ENRIQUE MOURIÑO VAQUERO EN APOYO DE LA SOLICITUD *EX PARTE* DE ASISTENCIA JUDICIAL DE CONFORMIDAD CON 28 U.S.C §1782**

Yo, Carlos Enrique Mouriño Vaquero, declaro lo siguiente:

1.    Tengo más de dieciocho años y conocimiento personal de los hechos que declaro a continuación.

2.    Como indiqué en mi primera declaración, soy abogado colegiado y admitido para el ejercicio de la profesión en la República Bolivariana de Venezuela ("Venezuela"). Adjunto aquí copia de mi *curriculum vitae.*

3.    Presento esta declaración en apoyo a la solicitud de asistencia judicial presentada por Antonio Lauría Pulgar (en adelante "Antonio"), de conformidad con la sección 28 U.S.C § 1782 (la "Solicitud"). Antonio solicitó y obtuvo la emisión de un mandato *duces tecum* para obtener la declaración de la Sra. Morelia Coromoto Pérez Presilla ("Pérez"), una persona natural, ubicada en el Condado de Broward, Florida, EE.UU.

4.    Pérez es la presunta denunciante en el caso MP-86604-2019, relativo a una investigación penal que adelanta actualmente la Fiscalía 45 del Ministerio Público a nivel Nacional con Competencia Plena en Venezuela (la "Fiscalía 45"), en contra de Antonio

1

y sus hermanos, Andrés, Jesús y Carmen Lauria Pulgar (conjuntamente, los "Hermanos Lauría"); y la abogada Milagros Margarita del Coromoto Zapata ("Zapata"). En adelante me referiré a esta investigación como el "Caso Penal."

5.      En el curso del Caso Penal, el Tribunal 20° de Primera Instancia Estatal del Circuito Judicial Penal del Área Metropolitana de Caracas ("Tribunal 20° de Primera Instancia") ha conocido del Caso Penal, ejerciendo las funciones jurisdiccionales de juez de  control, sobre las actuaciones de la Fiscalía 45, incluyendo la adopción de medidas que afectan los derechos subjetivos de los intervinientes en el Caso Penal.

6.      Los abogados de Antonio, en los Estados Unidos de América ("EE. UU."), me han requerido una ampliación de mi opinión legal, suscrita en fecha 14 de enero de 2022, atinente a la viabilidad de su Solicitud, bajo las leyes de Venezuela.  En particular, me ha sido solicitada una opinión sobre las consideraciones que ha expresado el abogado Hernando Díaz-Candia ("Díaz-Candia"), en apoyo de una petición de Pérez, para que esta honorable Corte anule su decisión que ordena ejecutar la Solicitud.

7.      Los abogados también me han solicitado un pronunciamiento sobre la validez de un correo electrónico que fue interpuesto por ante esta honorable Corte por parte de Pérez, a través de una declaración de su abogada, Doris Scarlet Piñero Silva ("Piñero Silva"). En este correo electrónico, fechado como del 19 de mayo de 2022, la Fiscalía 45, supuestamente, informa que "Morellia (sic) Coromoto Pérez presilla (sic) no está (sic) facultada para dar información sobre la referida denuncia."

8.      Con este propósito, los abogados de Antonio en EE. UU. me suministraron una copia de las declaraciones rendidas en este caso tanto por Díaz-Candia y como por Piñero Silva.

9.      Adicionalmente, el abogado defensor de Antonio en Venezuela, Profesor Freddy Aray ("Aray"), me ha informado que, por petición de la Fiscalía 45 en el Caso

2

Penal, el Tribunal 20° dictó una medida cautelar de prohibición de enajenar y gravar, sobre los bienes de los Hermanos Lauria y Zapata. Según Aray, este tribunal ordenó una medida similar respecto de todos los bienes que integran el acervo hereditario del padre de Antonio, Sr. Jesús Alberto Lauria Lesseur (de cujus).

10.     Aray también me ha informado que, a la fecha, Pérez no ha se ha constituido como querellante en el Caso Penal, ni ha presentado una acusación particular propia o se ha adherido a la acusación del Ministerio Público.

11.     En mi opinión, y como paso a exponer a continuación, disiento de Díaz-Candia en relación con tres aspectos fundamentales, a saber: (i) la facultad que tiene Antonio de obtener pruebas para el Caso Penal, (ii) la condición de "parte" de Pérez en el proceso penal, (iii) la imposibilidad de Pérez para declarar acerca del Caso Penal, bajo las leyes de Venezuela, sobre reserva de las investigaciones penales. Adicionalmente, en mi opinión, el correo electrónico adjunto a la declaración de Piñero Silva carece de validez bajo las leyes de Venezuela.

## I.     Antonio tiene derecho a recaudar las pruebas, a pesar de no haber sido imputado por la Fiscalía 45.

12.     En su declaración, Díaz-Candia argumenta que Antonio no puede obtener pruebas atinentes al Caso Penal, por no haber sido imputado por la Fiscalía 45. Sin embargo, en Venezuela, la garantía del derecho a la defensa y al debido proceso es de rango constitucional, y por lo tanto, en el caso en comento, es aplicable a todas las etapas del proceso penal. En efecto, el artículo 49 de la Constitución de la República Bolivariana de Venezuela, no diferencia ni limita este derecho o lo condiciona al hecho que el denunciado haya sido o no imputado por la Fiscalía o lo limita a una etapa procesal o investigativa especifica, en tal sentido el referido artículo 49 establece que:

> *"El debido proceso se aplicará a todas las **actuaciones judiciales y administrativas**; en consecuencia:*

3

*La defensa y la asistencia jurídica son derechos inviolables en todo estado y grado de la investigación y del proceso. Toda persona tiene derecho a ser notificada de los cargos por los cuales se le investiga, de acceder a las pruebas y de disponer del tiempo y de los medios adecuados para ejercer su defensa... (omissis)"* (énfasis añadido).

13.     Las normas legales, incluyendo las del Código Orgánico Procesal Penal, citadas por Díaz-Candia, en su declaración, deben dar efecto y aplicabilidad al citado artículo 49 constitucional y así deben ser interpretadas, especialmente, cuando el investigado tiene derechos e intereses que ya están siendo afectados en el marco del Caso Penal. En este sentido, he sido informado por Aray que los bienes de Antonio en Venezuela han sido objeto de una medida de prohibición de enajenar y gravar dictada por el Tribunal 20° de Primera Instancia, lo cual le afecta, con más énfasis, su esfera de derechos subjetivos y activa una situación reaccional donde le es perentorio defenderse, ante tales actuaciones.

14.     En este orden de ideas, la jurisprudencia de la Sala Constitucional del Tribunal Supremo de Justicia también ha resaltado que, en desarrollo de los derechos constitucionales a la defensa y al debido proceso, el afectado por una actuación judicial, como en el supuesto de Antonio en el Caso Penal, este debe contar con *"los medios adecuados para imponer sus defensas"* y con las posibilidades para que *"se oigan y analicen oportunamente sus alegatos y pruebas."* A ese respecto, puede ser consultada la sentencia número 5, de fecha 24 de enero de 2001 de la referida Sala.[1]

15.     De hecho, el Código Orgánico Procesal Penal de Venezuela permite al denunciado, no imputado, solicitar y obtener pruebas para la preparación de su defensa. A ese respecto, el artículo 12 de este Código señala que *"[l]a defensa es un derecho inviolable en todo estado y grado del proceso"* (énfasis añadido). Así mismo, el artículo 287 del Código reconoce que la facultad de solicitar y practicar pruebas no solo le

---

[1] Esta sentencia tiene carácter vinculante de conformidad con lo dispuesto en los artículos 335 y 336 de la Constitución *Ver* también sentencia No. 106 de 11 de febrero de 2004.

4

pertenece a *"el imputado o imputada", sino también a "las personas a quienes se les haya dado intervención en el proceso y sus representantes"* (énfasis añadido).[2]

16.     En este tema, la Sala Constitucional del Tribunal Supremo de Justicia, ha señalado que existen otros actos procesales del Ministerio Público (Fiscalía), dentro del proceso penal en Venezuela, en sede investigativa o jurisdiccional, que pueden dar lugar a la activación de los derechos que se derivan de la imputación de cargos. En ese sentido, la Sala Constitucional sostuvo, con carácter vinculante, en la sentencia No. 1381, de fecha 30 de octubre de 2009, lo siguiente:

> *"Tal como se señaló supra, la condición de imputado puede adquirirse mediante cualquier actividad de investigación criminal que inequívocamente conlleve a considerar a una persona como autor o partícipe del hecho punible, y dentro de tal actividad está comprendida la comunicación del hecho al encartado en la audiencia prevista en el artículo 250 del Código Orgánico Procesal Penal, la cual encuadra, por ende, en la hipótesis descrita en el texto del artículo 124 del Código Orgánico Procesal Penal.*
>
> *Aceptar la postura reduccionista sostenida por la parte actora, a saber, que la condición de imputado se adquiere única y exclusivamente cuando el hecho punible es comunicado a la persona mediante un acto formal practicado ante la sede física del Ministerio Público (es decir, condicionar la defensa material a la práctica de la imputación "formal" en la sede del Ministerio Público), implicaría una errónea interpretación del primer párrafo del artículo 130 del Código Orgánico Procesal Penal, basada en un automatismo ciego carente de sentido alguno, que impone un ilegítimo obstáculo al ejercicio de los derechos y garantías constitucionales y legales del imputado"* (énfasis en el original).

17.     En este caso, Antonio es un sujeto investigado por la Fiscalía 45 y sus bienes han sido objeto de medidas cautelares por el Tribunal 20° de Primera Instancia. En ese sentido, han ocurrido actos que han afectado la esfera de derechos subjetivos de Antonio, que le deben permitir el ejercicio de los derechos y la activación de las garantías

---

[2] En ese sentido, mediante sentencia de fecha 25 de abril de 2007, recaída en el caso *Alexis Alfredo Rivero Pereira*, la Sala Constitucional sostuvo que "en la fase preparatoria del proceso penal, las partes recolectarán, respectivamente, todos los elementos de convicción que permitan fundar la acusación del fiscal y la defensa del imputado, dentro de la cual, el imputado, las personas a quienes se les haya dado intervención en el proceso y sus representantes, podrán solicitar al fiscal la práctica de diligencias para el esclarecimiento de los hechos. . ." (énfasis añadido).

que se derivan de la formulación de la imputación, bajo lo dispuesto en el artículo 49 constitucional, en concordancia con los artículos 12 y 287 del Código Orgánico Procesal Penal.

18.     La situación procesal a la que está sometido Antonio lleva consigo un señalamiento sobre su posible responsabilidad penal y le debe ser garantizado el derecho a pre constituir y aportar las pruebas necesarias para el ejercicio de su derecho a la defensa en el Caso Penal, incluyendo la declaración de Pérez. Esto, a pesar de no haber sido imputado formalmente por la Fiscalía 45.

**II.     Pérez no detenta la condición de "Parte" en el Caso Penal.**

19.     Contrario a lo afirmado por Díaz-Candia en su declaración, Pérez no es "parte" del Caso Penal. De conformidad con lo dispuesto en el numeral 4 del artículo 285 de la Constitución, es competencia del Ministerio Público *"Ejercer en nombre del Estado la acción penal"*. Y, de acuerdo con lo dispuesto en el artículo 273 del Código Orgánico Procesal penal de Venezuela, *"**El o la denunciante no es parte en el proceso**, pero si existe falsedad o mala fe en la denuncia, él o la que la comete será responsable conforme a la ley."* (énfasis propio), por lo que no se trata de una confrontación o litigio de pretensiones entre partes, prima facie, si no de la tutela del interés general y el orden público.

20.     Si bien Pérez interpuso una denuncia en contra de Antonio, para ser parte del Caso Penal, es necesario que ella interponga una querella, presente una acusación propia, o se adhiere a la acusación del Ministerio Público. Según me ha sido informado por el profesor Aray, esto no ha ocurrido. Además, toda vez que el Caso Penal involucra la investigación de delitos de acción pública, Pérez no puede desplazar al Ministerio Público en el ejercicio de la acción penal.

6

21.     En tanto Antonio no ha sido formalmente acusado, Pérez tampoco puede ser considerada como parte del Caso Penal de acuerdo con lo establecido por el artículo 309 del Código Orgánico Procesal. Este artículo dispone que, luego de presentada la acusación, quien se ha presentado como víctima en el proceso penal puede "adherirse a la acusación de la o el Fiscal o presentar una acusación particular." Y, *"[l]a admisión de la acusación particular propia de la víctima al término de la audiencia preliminar, le conferirá la cualidad de parte querellante en caso de no ostentarla con anterioridad por no haberse querellado previamente durante la fase preparatoria."* (énfasis añadido). En tal virtud, es equivocado darle la condición de "parte" a Pérez, como también lo es argumentar que tal condición, le impide declarar sobre los hechos o circunstancias que conoce y que desencadenaron el Caso Penal.

**III.   Pérez no tiene obstáculos legales en Venezuela para rendir una declaración bajo la solicitud.**

22.     Adicionalmente, Díaz-Candia se equivoca al considerar que la confidencialidad o reserva de la investigación le impide a Pérez declarar y entregar información y documentos a Antonio para la preparación de su defensa.

23.     En este caso, la Solicitud no versa sobre el acceso a las actas fiscales de investigación, de hecho, al no ser parte del Caso Penal, Pérez no debería estar en posesión de dichas actas.

24.     Según lo dispuesto por el artículo 286 del Código Orgánico Procesal Penal, la defensa se hace extensiva a las actas y actos de la investigación del Ministerio Público, además, estos actos son reservados "para los terceros", mas no para los investigados, imputados o acusados. En efecto, el mencionado artículo 286 ha sido interpretado por la Sala Constitucional del Tribunal Supremo de Justicia, para indicar que a pesar de la

7

reserva de la investigación, **el Ministerio Público tiene el deber de informar a la defensa los actos realizados.**[3]

25.     Antonio, en su condición de investigado en el Caso Penal, no es un tercero y, en ese sentido, no le aplica la excepción de reserva.

26.     Pero resulta importante señalar que ni esta disposición, ni ninguna otra fuente legal de derecho Venezolano, incluyendo las disposiciones citadas por el correo electrónico adjunto a la declaración de Piñero Silva, extiende la reserva de la investigación para prohibir que un testigo declare sobre hechos o circunstancias que son de su conocimiento personal. Así, en gracia de discusión, la reserva de la investigación, de haber sido acordada por la Fiscalía, pudiera impedir a Pérez suministrar a Antonio las actas de las actuaciones del Ministerio Público en el Caso Penal (que repito, no deberían estar en su poder). Sin embargo, la reserva no impide que Pérez declare sobre los hechos que fundamentaron la denuncia penal, o impide que Pérez entregue a Antonio los documentos que se encuentran en su poder, relacionados con los señalamientos de su denuncia penal. Además, resulta paradójico y contradictorio, que el Ministerio Público, quien es garante del respeto de los derechos y garantías constitucionales en el proceso (vid. artículo 285.1 constitucional),  pretenda limitar o hacer nugatorio el derecho a la defensa de Antonio, así sea en otra jurisdicción, supuestamente prohibiendo el testimonio de López.

27.     En su declaración, Díaz-Candia también erra al afirmar que, si Pérez rinde una declaración en respuesta a la Solicitud de Antonio, podría incurrir en el delito de obstrucción a la justicia. En Venezuela, de conformidad con el artículo 131 de la Constitución, *"Toda persona tiene el deber de cumplir y acatar esta Constitución, las leyes y los demás actos que en ejercicio de sus funciones dicten los órganos del Poder*

---

[3] *Ver* Sentencia de la Sala N° 1.927 del 14 de julio de 2003, caso: *Tayron Robinson Aristigueta Ramírez.*

*Público"*. De esta manera, si Pérez rinde su declaración en cumplimiento de una orden judicial de la Corte Federal Distrital de EE.UU, estaría acatando un deber constitucional y no debería ser penalizada por ello, al acatar una orden jurídicial de una Corte competente. Pérez, además, no estaría actuando con dolo y solo por una causa extraña no imputable a su persona, en tutela de los derechos de Antonio en ejecución de una orden judicial y por tanto, mal podría incurrir en el supuesto delito de obstrucción a la justicia.

28. Todo lo contrario, Pérez estaría cumpliendo con su deber constitucional de colaborar con la justicia, al provocar la producción de pruebas que generen un mejor conocimiento de la Fiscalía y tribunales, en cuanto al Caso Penal.

29. De igual manera, el principio de territorialidad de la ley penal sería una barrera para el ejercicio de la supuesta acción penal en contra de Pérez, por obstrucción de la justicia. Este principio está consagrado en el artículo 3 del Código Penal venezolano, bajo el cual "… *Todo el que cometa un delito o una falta en el espacio geográfico de la República, será penado con arreglo a la ley venezolana*", por lo que no podría perseguirse, en Venezuela, por unos actos ejecutados en EE. UU, por mandato judicial.

## IV. La invalidez del presunto correo electrónico supuestamente emanado de la Fiscalía 45.

30. En mi opinión, el correo electrónico del 19 de mayo de 2022, que Piñero Silva adjunta a su declaración, para que sea considerado por una corte de EE. UU., carece de validez bajo las leyes de Venezuela.

31. El artículo 16 numeral 7, de la Ley Orgánica del Ministerio Público (Fiscalía) de la República Bolivariana de Venezuela establece que el Ministerio Público es el encargado de librar comunicaciones o ejecutar exhortos o cartas rogatorias u otras solicitudes de asistencia mutua en materia penal, entre países, en este entre caso Venezuela y EE.UU. En ese sentido, una comunicación como la del correo electrónico debería ser dirigida directamente a EE.UU. por el Ministerio Público y no a través de un

tercero y en el supuesto de existir, debería estar debidamente suscrita por el máximo jerarca de dicho poder público, ergo el Fiscal General.

32.     El correo electrónico también es invalido bajo lo dispuesto por el Código Orgánico Procesal Penal, en los artículos 108 (numeral 17) y 201, ambos inclusive, así como por la Convención Interamericana sobre Exhortos y Cartas Rogatorias, del 30 de enero de 1975, ratificada por Venezuela en fecha 8 de diciembre de 1984. Según estas normas, los documentos de las autoridades de Venezuela con destino a una Corte de EE.UU. deben ser legalizados por un funcionario consular del país requirente designado para tal efecto. Además, el documento oficial debe ser debidamente traducido al idioma del país requerido, por medio de interprete público certificado.

33.     Adicionalmente, bajo la Ley Aprobatoria del Convenio entre la República de Venezuela y el Gobierno de los Estados Unidos de América sobre Asistencia Legal Mutua en Materia Penal, artículo 2 numeral 2, la autoridad central por parte de Venezuela para enviar este tipo de comunicaciones, es el Fiscal General de Venezuela -  un fiscal que conforme la estructura organizativa de dicho órgano, como la Fiscalía 45, no puede, directa, ni indirectamente, transmitir este tipo de comunicaciones una Corte de EE.UU. , al hacerlo estaría usurpando las atribuciones del Fiscal General, generando la ineficacia y nulidad *ope legis* del referido correo electrónico, por mandato del artículo 138 constitucional, que dispone: *"Toda autoridad usurpada es ineficaz y sus actos son nulos"*

34.     De igual manera, el correo electrónico, a pesar de ser un mensaje de datos supuestamente emitido por la Fiscalía 45, no cumple con los requisitos formales de la Ley de Mensaje de Datos y Firmas Electrónicas publicada en la Gaceta Oficial N° 37.148 del 28 de febrero de 2001. Estos requisitos buscan asegurar la integridad y autenticidad de las comunicaciones electrónicas en Venezuela.

35.     En particular, el correo electrónico no está firmado electrónicamente bajo los parámetros del artículo 16 de esta ley; y el artículo 17 de la ley señala que *"La Firma Electrónica que no cumpla con los requisitos señalados en el artículo anterior no tendrá los efectos jurídicos que se le atribuyen en el presente Capítulo"*.

36.     Así mismo, el correo electrónico no se ciñe a los criterios que aplican a los actos administrativos o procesales o judiciales emanados mediante medios electrónicos, tal como lo estableció la Sala Político-Administrativa del Tribunal Supremo de Justicia, en sentencia número 294 del 06 de abril 2017. En dicho precedente, el Tribunal Supremo afirmó, bajo lo dispuesto en el artículo 1.363 del Código Civil, en concordancia con el artículo 429 del Código de Procedimiento Civil, que para gozar de eficacia y valor probatorio, el acto, oficio, acta, acto procesal o sentencia debe estar completamente reproducido, copiado o anexo al correo electrónico.[4]

37.     En este caso, el correo electrónico no reproduce en su integridad el pronunciamiento oficial de la Fiscalía 45. El correo electrónico se refiere a una "diligencia realizada ante esta Representación Fiscal" sin reproducir el contenido de dicha diligencia y acto seguido resume una información supuestamente proveniente de la Fiscalía 45. Así, no se especifica la base fáctica que motiva la decisión o el asunto que pretende resolver, ni mucho menos reproduce un acto emanado de la referida Fiscalía 45.

38.     Entiendo además, de la verificación comparativa del Caso Penal con el correo,   el número de caso que aparece citado en el correo electrónico es equivocado o no se corresponde con el Caso Penal primigenio.

---

[4] En este mismo sentido se pronuncia la Ley Infogobierno, publicada en Gaceta Oficial número 40.274, de fecha 17 de octubre de 201; la Ley de Mensaje de Datos y Firmas Electrónicas publicada en la Gaceta Oficial N° 37.148 del 28 de febrero de 2001; y la Resolución 2021-001 de Sala Plena del Tribunal Supremo de Justicia de fecha 9 de julio de 2021 contentiva de los "Lineamientos Para La Suscripción Y Publicación De Decisiones Con Firma Digital, Práctica De Citaciones Y Notificaciones Electrónicas Y La Emisión De Copias Simples O Certificadas Por Vía Electrónica",



39.     Por tal virtud, considero que el correo electrónico adjunto a la declaración de Piñero Silva carece de valor legal, es ineficaz y su autenticidad no puede ser verificada bajo las leyes y regulaciones de Venezuela.

40.     Pero incluso si este correo electrónico efectivamente proviniese de la Fiscalía 45, debo notar que el mismo no prohíbe a Pérez dar información sobre los hechos o circunstancias que conoce y que son relevantes para la preparación de la defensa de Antonio. Ni el correo electrónico, ni las normas legales citadas en dicho correo, pueden tener este efecto bajo las leyes de Venezuela.

41.     Vistos los argumentos expresados ut supra y en mi anterior opinión , considero que Pérez está habilitada bajo las leyes de Venezuela, para responder a la Solicitud de Antonio.

42.     Conforme a 28 USC §1746(1), yo declaro, bajo pena de perjurio a tenor de las leyes de Estados Unidos de América, que lo que antecede es fiel y exacto.

Suscrito este día 27 de mayo de 2022, en Miami, Florida.


Por: _____
       Carlos Enrique Mouriño Vaquero

12

# Carlos Enrique Mouriño Vaquero

Av. Francisco de Miranda, Edificio Seguros Venezuela, Piso 11, Oficina 11-A, Urb. Campo Alegre, Caracas, Venezuela.
T: +58-212-952-13-52/Email: cemv@admasociados.com

## PERSONAL INFORMATION

Place and date of birth: Caracas, June 25, 1969

Nationalities: Venezuela and Spain

Marital status: Married

## PROFESSIONAL EXPERIENCE

| | |
|---|---|
| 2005 | Managing partner and founder of ADM & Asociados (formerly known as Adrian, Diaz, Mouriño & Asociados). |
| 2008 | Expert Witness in international litigation and arbitration proceedings administered under the rules of the International Center for Settlement of Investment Disputes (ICSID), the International Chamber of Commerce (ICC) and the London Association of Maritime Arbitrators. |
| 2000- 2004 | Legal Consultant for the Multinational Insurance Group, C.A. 2000 Vice President, Judge of the First Court of Administrative Law |
| 1999 | Member of the Arocha, Herrera & Asociados Law Firm. Advisor to the Judiciary Council on writing the rules for their new regulations in the framework of the World Bank program. |
| 1998 | Representative (Alternate) to the Congress of the Republic for the State of Miranda. Legal representative of the President of the Republic (Rafael Caldera) before the Supreme Court of Justice. |
| 1997 | Advisor to the Ministry of Justice, the Ministry of Internal Affairs, the Intergovernmental Fund for Decentralization (FIDES), the Mayor's Office of the Chacao Municipality, the Mayor's Office of the Tovar Municipality and the Association of Mayors of the State of Nueva Esparta. |
| 1994 | Advisor and member of the Official Committee of Unsecured Creditors of Banco Latino International, South Federal Bankruptcy Court Miami, FL, USA. |

## EXPERIENCE IN INTERNATIONAL LITIGATION AND ARBITRATION

Year 2006    Vanessa Ventures v. Bolivarian Republic of Venezuela. Arbitration substantiated under the rules of the ICSID Complementary Mechanism

Year 2007    Skye Ventures v. Bolivarian Republic of Venezuela. Legal proceeding substantiated before the District Court for Southern Ohio, USA.

Year 2010    Expert witness on Venezuelan law, in an arbitration substantiated under the rules of the ICC, based in Madrid, Spain.

Year 2011    Highbury International AVV *et al* v. Bolivarian Republic of Venezuela.

Arbitration substantiated under the ICSID rules. Skanga Marine Ltd v. Petroleos de Venezuela. Court proceeding substantiated before the New York Southern Court, USA.

Year 2012    Flughafen Zürich AG *et al* v. Bolivarian Republic of Venezuela. Arbitration substantiated under the ICSID rules.

Year 2013    Rusoro Mining Limited v. Bolivarian Republic of Venezuela. Arbitration substantiated under the rules of the ICSID Complementary Mechanism

Year 2015    Skye Ventures v. Bolivarian Republic of Venezuela. Judicial procedure substantiated before the District Court for Southern Ohio, USA.

Year 2016    Commodities and Minerals Enterprise LTD v. Ferrominera del Orinoco. Case substantiated before the Southern District Court of New York, USA.

Expert witness on Venezuelan law in an arbitration conducted under the rules of the London Association of Maritime Arbitrators, based in London, United Kingdom.

Expert witness on Venezuelan law in an arbitration conducted under the rules of the London Association of Maritime Arbitrators, based in Miami, USA.

Expert witness on Venezuelan law in an arbitration substantiated under the UNCITRAL rules, based in London, United Kingdom.

Year 2017    Commodities and Minerals Enterprise LTD v. Ferrominera del Orinoco. Case substantiated before the Court of the Southern District of Florida, USA.

Agroinsumos Ibero-Americanos S.L. et al v. Bolivarian Republic of Venezuela.

## EDUCATION

1996    Universidad Católica Andrés Bello. Degree: Specialist in Administrative Law.

1991    Universidad Católica Andrés Bello. Degree: Lawyer.

2020    Universidad Antonio Nebrija , Madrid, Spain. Degree: In Law (to have the degree).

## PUBLICATIONS

•    "*The Financial Emergency in Venezuela and the Related Banks in the USA*". New Horizons Legal Review (USA). 1996.

•    "Participatory Democracy in Latin America" Corporacion  Andina  de Fomento. Bolivia. 1998.

•    "Citizen participation". Studies in Public Law Vol. II. Book tribute to Humberto J. La Roche. Supreme Court of Justice, Caracas - 2001.

•    "Habeas Data". Tribute book to Universidad Catolica Andres Bello on its 50th Anniversary. Universidad Católica Andrés Bello. Caracas - 2004.

## ACADEMIC ACTIVITY/TEACHING

•    Professor, Constitutional Law. Universidad Católica Andrés Bello. 2016 - 2017 (Postponed Sabbatical)

•    Professor, Constitutional Law. Universidad Católica Andrés Bello. 2014 - 2015.

•    Professor of Internships II. Universidad Católica Andrés Bello. 2002 - 2015.

•    Professor of Administrative Law I. Universidad Católica Andrés Bello. 1996 - 2014.

•    Professor of Internships II. Universidad Católica Andrés Bello. Academic years 2002 - 2014.

•    Professor of Administrative Law II. Universidad Católica Andrés

Bello. 2001 - 2002.

- Professor of Constitutional Law at Universidad Católica Andrés Bello. Academic years 1996 - 2002.

- Professor of Constitutional Law at Universidad Santa María. 1996.

- Professor of Administrative Litigation at Universidad Santa María. 1996.

- Post-graduate professor at the Universidad Santa María. Administrative Procedures. 1997.

- Professor at the Police Academy of the Chacao Municipality. Fundamental Principles of Public Law. 1998.

- Assistant to Professor Carlos Miguel Escarra Malave on his Courses on Administrative Law and Administrative Litigation. Universidad Católica Andrés Bello. 1988-1992.

### SPEAKERS/CONFERENCES

- Speaker, Co-organizer of the I Conference on the Breakup between the State and Society. Universidad Católica Andrés Bello. Caracas. 1994

- Speaker and Coordinator of the First Conferences on Decentralization and Reform of the State. COPRE, State of Miranda.

-  Speaker at the "First Cycle of Legal Conferences" of the Ministry of Internal Affairs Legal Office. December 1995.

- Speaker at the Regional Conference on Political Cooperation regarding Decentralization in Latin America. August 1996. Caracas. (UNDP).

- Speaker at the "Conference for National Security". Association of Public Notaries. July 1996.

- Speaker at the Conference on "The Crisis and Reform of the Judiciary". Universidad Católica Andrés Bello. April 1997.

- Speaker in the courses for Lawyers' Professional Improvement. State of Miranda Bar Association. January 1997.

- Speaker at the Conferences on Participatory Democracy in Latin America. Bolivia. Organized by the Andean Development Corporation. 1998.

- Speaker at the Conferences on Tax Decentralization. Association of State Attorneys. Merida. 1999.

- Speaker at Conferences on Constitutional Reform. Zulia. 1998.

- Speaker at the Conference on the Constituent Process in Venezuela. State of Miranda. 1999.

- Speaker at the Conference on the Constituent Process in Venezuela. Universidad Católica Andrés Bello. 1999.

- Speaker at the Conference on "New Jurisprudential Trends on Constitutional and Administrative Justice". Coro. 2000.

- Speaker at the Conference on "New Jurisprudential Trends on Constitutional and Administrative Justice". Barquisimeto. 2000.

- Speaker at the Conference on "New Jurisprudential Trends on Constitutional and Administrative Justice". Maracay. 2000.

- Speaker at the Conference on the Rule of Law in Latin America, organized by the Cuban-American Bar Association. Miami. 2000.

- Speaker at the Conference on "New Jurisprudential Trends in Constitutional and Administrative Justice". U.C.V. 2000.

- Speaker at the Seminar "Legal System for Public Administration". Administrative Law Studies Foundation (FUNEDA). 2001.

- Speaker at the seminar on "Constitutional Justice". Maracaibo Bar Association, State of Zulia, organized by FUNEDA. 2002.

- Speaker at Conferences for Constitutional Reform, organized by the Attorney General's Office. 2009.

- Speaker at Lawyers' Training Days of the Attorney General's Office. 2009.

- Speaker at Conferences on Constitutional Law, organized by the Universidad Católica Andrés Bello. 2012.

## **LANGUAGES**

Spanish.

English

Italian

Portuguese

## CERTIFICATE OF ACCURACY

I, **Esther Cecilia Crespo**, an interpreter certified by the Administrative Office of the United States Courts, for and on behalf of **Liaison Services, Inc.**, hereby certify that the foregoing translation from Spanish into English, attached hereto and consisting of <u>6</u> page(s), is a true and correct translation of the original document.

Esther Cecilia Crespo
Miami, Florida

# Carlos Enrique Mouriño Vaquero

Av. Francisco de Miranda, Edificio Seguros Venezuela, Piso 11, Oficina 11-A, Urb. Campo Alegre, Caracas, Venezuela.
T: +58-212-952-13-52/Email: cemv@admasociados.com

## DATOS PERSONALES

Lugar y fecha de nacimiento: Caracas, 25 de junio de 1969.

Nacionalidades: venezolana y española.

Estado Civil: casado.

## EXPERIENCIA  PROFESIONAL

| | |
|---|---|
| 2005- | Socio principal y fundador de la firma de abogados ADM & Asociados (anteriormente Adrian, Diaz, Mouriño & Asociados). |
| 2008- | Testigo Experto en litigios internacionales y procedimientos arbitrales administrados bajo las reglas del Centro Internacional de Arreglo de Diferencias relativas a Inversiones (CIADI), la Cámara de Comercio Internacional (CCI) y la Asociación de Árbitros Marítimos de Londres. |
| 2000-2004 | Consultor Jurídico del Grupo Asegurador Multinacional de Seguros, C.A. 2000 Magistrado Vicepresidente de la Corte Primera de lo Contencioso Administrativo. |
| 1999 | Miembro del Escritorio Arocha, Herrera & Asociados. Asesor del Consejo de la Judicatura para la redacción de los reglamentos relativos a su nueva normativa, dentro del marco del programa del Banco Mundial. |
| 1998 | Diputado (Suplente) al Congreso de la República por el Estado Miranda. Apoderado judicial del Presidente de la República (Rafael Caldera), ante la Corte Suprema de Justicia. |
| 1997 | Asesor del Ministerio de Justicia, del Ministerio de Relaciones Interiores, del Fondo Intergubernamental para la Descentralización (FIDES), de la Alcaldía del Municipio Chacao, de la Alcaldía del Municipio Tovar y de la Asociación de Alcaldes del Estado Nueva Esparta. |

1994            Asesor y miembro del *Official Commitee of Unsecured Creditors of Banco Latino Int'l*, Corte Federal de Bancarrota del Sur de Florida, Miami, Fl, EE.UU.

## EXPERIENCIA EN LITIGIOS Y ARBITRAJES INTERNACIONALES

Año 2006-   Vanessa Ventures Vs. República Bolivariana de Venezuela. Arbitraje sustanciado bajo las Reglas del Mecanismo Complementario del CIADI.

Año 2007-   Skye Ventures Vs. República Bolivariana de Venezuela. Proceso judicial sustanciado ante la Corte del Distrito Sur de Ohio, EE.UU.

Año 2010-   Testigo experto en derecho venezolano, en un arbitraje sustanciado bajo las reglas de la ICC, con sede en Madrid, España.

Año 2011-   Highbury International AVV *et al* Vs. República Bolivariana de Venezuela. Arbitraje sustanciado bajo las reglas del CIADI.

Skanga Marine Ltd Vs. Petróleos de Venezuela. Proceso judicial sustanciado ante la Corte del Distrito Sur de Nueva York, EE.UU.

Año 2012-   Flughafen Zürich AG *et al* Vs. República Bolivariana de Venezuela. Arbitraje sustanciado bajo las reglas del CIADI.

Año 2013-   Rusoro Mining Limited Vs. República Bolivariana de Venezuela. Arbitraje sustanciado bajo las Reglas del Mecanismo Complementario del CIADI.

Año 2015-   Skye Ventures Vs. República Bolivariana de Venezuela. Proceso judicial sustanciado ante la Corte del Distrito Sur de Ohio, EE.UU.

Año 2016-   Commodities and Minerals Enterprise LTD Vs. Ferrominera del Orinoco. Proceso judicial sustanciado ante la Corte del Distrito Sur de Nueva York, EE.UU.

Testigo experto en derecho venezolano en un arbitraje sustanciado bajo las reglas de la Asociación de Árbitros Marítimos de Londres, con sede en Londres, Reino Unido..

Testigo experto en derecho venezolano en un arbitraje sustanciado bajo las reglas de la Asociación de Árbitros Marítimos de Londres, con sede en Miami, EE. UU.

Testigo experto en derecho venezolano en un arbitraje sustanciado bajo las reglas de la UNCITRAL, con sede en Londres, Reino Unido.

Año 2017-   Commodities and Minerals Enterprise LTD Vs. Ferrominera del Orinoco. Proceso judicial sustanciado ante la Corte del Distrito Sur de Florida, EE.UU. Agroinsumos Ibero-Americanos S.L. *et al* Vs. República Bolivariana de Venezuela.

## FORMACIÓN ACADÉMICA.

1996   Universidad Católica Andrés Bello**.** Título obtenido: Especialista en Derecho Administrativo.

1991   Universidad Católica Andrés Bello. Título obtenido: Abogado.

2020   Universidad Antonio Nebrija, Madrid, España.Título obtenido: Grado en Derecho (por obtener el grado).

## PUBLICACIONES.

- "*La Emergencia Financiera en Venezuela y los Bancos Relacionados en USA*". New Horizons Legal Review (USA). 1.996.

- "*Democracia Participativa en Latinoamérica*" Corporación Andina de Fomento. Bolivia. 1.998.

- "*Participación Ciudadana*". Estudios de Derecho Público Vol. II, Libro Homenaje a Humberto J. La Roche. Tribunal Supremo de Justicia, Caracas-2001.

- "*Habeas Data*". Libro homenaje a la Universidad Católica Andrés Bello en su 50 aniversario. Universidad Católica Andrés Bello. Caracas-2004.

## ACTIVIDAD ACADÉMICA/DOCENCIA.

- Profesor de Derecho Constitucional en la Universidad Católica Andrés Bello. Años 2016-2017 (Año Sabático Prorrogado)

- Profesor de Derecho Constitucional en la Universidad Católica Andrés Bello. Años académicos 2014-2015.

- Profesor de Practicas II en la Universidad Católica Andrés Bello. Años académicos 2002-2015.

- Profesor de Derecho Administrativo I en la Universidad Católica Andrés Bello. Años académicos 1996-2014.

- Profesor de Practicas II en la Universidad Católica Andrés Bello. Años académicos 2002-2014.

- Profesor de Derecho Administrativo II en la Universidad Católica Andrés Bello. Año académico 2001 - 2002.

- Profesor de Derecho Constitucional en la Universidad Católica Andrés Bello. Años académicos 1996 - 2002.

- Profesor de Derecho Constitucional en la Universidad Santa María. Año 1996.

- Profesor de Contencioso Administrativo en la Universidad Santa María. Año 1996.

- Profesor de Post-grado en la Universidad Santa María. Procedimientos Administrativos. Año 1997.

- Profesor de la Academia de Policía del Municipio Chacao. Principios Fundamentales al Derecho Público. Año 1998.

- Preparador del Profesor Carlos Miguel Escarra Malavé en sus Cátedras de Derecho Administrativo y Contencioso Administrativo Universidad Católica Andrés Bello. Años 1988-1992.

## PONENCIAS/CONFERENCIAS

- Ponente Co-organizador de las I Jornadas sobre la Ruptura entre Estado y Sociedad. UCAB. Caracas. 1.994

- Ponente y Coordinador de las Primeras Jornadas de Descentralización y Reforma del Estado. COPRE del Estado Miranda.

- Ponente en el "Primer Ciclo de Conferencias Jurídicas" de la Consultoría Jurídica del Ministerio de Relaciones Interiores. Diciembre de 1.995.

- Ponente en la Conferencia Regional sobre Cooperación Política en Materia de Descentralización en América Latina. Agosto 1.996. Caracas. PNUD (ONU).

- Ponente en la "Jornadas para la Seguridad Nacional". Asociación de Notarios Públicos. Julio de 1.996.

- Ponente en las Jornadas sobre "La Crisis y reforma del Poder Judicial". UCAB. Abril de 1.997.

- Ponente en los cursos de Mejoramiento Profesional del Abogado. Colegio de Abogados del Estado Miranda. Enero de 1.997.

- Ponente en las Conferencias sobre la Democracia Participativa en Latinoamérica. Bolivia. Organizado por la Corporación Andina de Fomento. 1.998.

- Ponente en las Conferencias sobre Descentralización Tributaria. Asociación de Procuradores de Estado. Mérida. Año 1.999.

- Ponente en las Conferencias sobre Reforma Constitucional. Zulia. 1998.

- Ponente en las Jornadas sobre el Proceso Constituyente en Venezuela. Estado Miranda. Año 1.999.

- Ponente en las Jornadas sobre el Proceso Constituyente en Venezuela. UCAB. Año 1.999.

- Ponente en las Jornadas sobre "Las Nuevas tendencias Jurisprudenciales de la Justicia Constitucional y Administrativa". Coro. Año 2000.

- Ponente en las Jornadas sobre "Las Nuevas tendencias Jurisprudenciales de la Justicia Constitucional y Administrativa". Barquisimeto. Año 2000.

- Ponente en las Jornadas sobre "Las Nuevas tendencias Jurisprudenciales de la Justicia Constitucional y Administrativa". Maracay. Año 2000.

- Ponente en las Jornadas sobre el Estado de Derecho en Latinoamérica, organizadas por la Barra Cubano-Americana de abogados. Miami. Año 2000.

- Ponente en las Jornadas sobre "Las Nuevas tendencias Jurisprudenciales de la Justicia Constitucional y Administrativa". U.C.V. Año 2000.

- Ponente en el Seminario "Régimen Jurídico de la Función Pública". Fundación de Estudios de Derecho Administrativo (FUNEDA). Año 2001.

- Ponente en el seminario sobre "Justicia Constitucional", dictado en el Colegio de Abogados de Maracaibo, estado Zulia, organizado por FUNEDA.  Año 2002.

- Ponente en Jornadas para la Reforma Constitucional, organizadas por la Procuraduría General de la República, Año 2009.

- Ponente en Jornadas de Formación de Abogados de la Procuraduría General de la República. Año 2009.

- Ponente en Jornadas de Derecho Constitucional, organizadas por la Universidad Católica Andrés Bello, Año 2012.

**<u>IDIOMAS</u>**.

Español.

Inglés.

Italiano.

Portugués.

EXHIBIT "3"

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-20836-MC-ALTONAGA/TORRES**

In Re Application of

ANTONIO LAURIA PULGAR

Applicant,

Pursuant to 28 U.S. Code § 1782
For Judicial Assistance in Obtaining
Evidence For Use in a Foreign and
International Proceeding.

_____/

**DECLARATION OF RAUL VALDES-FAULI**

The undersigned, Mr. Raul Valdes-Fauli, Esq., declares the following:

1.      I am over the age of eighteen, a member of the Florida Bar, and I make the following sworn declaration based upon my personal knowledge.

2.      I am the sole Officer and Director of Rosario Investments Corp, a Panama Corporation, which is the sole Officer and Director of Belltower Holdings Ltd., a British Virgin Islands company (the "Belltower"). In such capacity, I manage Belltower's business affairs, and I am duly and fully authorized to testify as to the matters stated herein.

3.      In 2001, Belltower acquired certain real estate in Broward County located at 1125 W. Cypress Drive, Pompano Beach, Florida 33069 (the "Property").

4.      Jesus Lauria Lesseur ("Lauria") was, at the time of the purchase of the Property, an officer of Belltower. However, Lauria was not, and has never been a shareholder of Belltower.

5.      After the acquisition of the Property, Belltower permitted Lauria and his wife, Morelia Perez ("Perez"), to reside at the Property.

1

6.      Perez has not been a shareholder of Belltower at any time.

7.      Since Lauria passed away in 2006, Belltower has not been a party to any proceedings relating to Lauria's estate.

8.      In December 2021, Belltower decided to retake possession of the Property, and retained the law firm of Diaz Reus & Targ LLP to conduct any actions needed to that effect.

9.      On April 8, 2022, Belltower filed an action to retake possession of the Property in the County Court of the 17th Judicial Circuit in and for Broward County, Florida.   Said action, which is styled   *Belltower Holdings Ltd. v. Morelia C. Perez* (Case No. COCE22020858) is pending.

Pursuant to 28 USC §1746(1), I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and accurate.


Signed May 30, 2022, in Miami, Florida.


By: Raul Valdes-Pauli